UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Haishan Yang, Plaintiff,

Case No. 0:25-cv-00089

vs.

Hannah Neprash, in her individual and official capacity as Associate Professor at the University of Minnesota ("the University");

Scott Lanyon, in his individual and official capacity as Vice Provost at the University;

JaneAnne Murray, in her individual and official capacity as Chair of the Campus Committee on Student Behavior Hearing (CCSB) at the University;

Sharon Dzik, in her individual and official capacity as University Representative during the CCSB hearing at the University,

Defendants.

# FIRST AMENDED COMPLAINT

## INTRODUCTION

1. This action is brought under 42 U.S.C. § 1983 for violations of Plaintiff's due process rights under the Fourteenth Amendment to the United States Constitution.
2. Plaintiff also seeks damages for financial harm, reputational harm, emotional distress, and punitive damages caused by Defendants' actions and procedural violations during the disciplinary process.

## PARTIES

3. **Plaintiff**:
   - Haishan Yang is a former third-year Ph.D. student in the Health Services Research, Policy & Administration Ph.D. program at the University. At the time of expulsion, Plaintiff was an international student on an F-1 visa.
4. **Defendants**:
   a. **Professor Hannah Neprash**: An Associate Professor at the University who generated a ChatGPT answer, edited it at least ten times to make it more similar to the plaintiff's exam answers, and used it as evidence against the plaintiff for alleged ChatGPT usage in the exam.
   b. **Vice Provost Scott Lanyon**: The appellate officer upheld Plaintiff's expulsion despite acknowledging the altered evidence and the fact that Plaintiff had no opportunity to respond to Professor Neprash's ChatGPT log, which was introduced only three minutes before the conclusion of the cross-examination in the CCSB hearing.
   c. **Chair JaneAnne Murray**: The Chair of CCSB hearing who prematurely concluded the cross-examination and denied Plaintiff adequate opportunity to challenge evidence.
   d. **University Representative Sharon Dzik**: Acted on behalf of the University during the CCSB hearing and prevented Plaintiff's student advocate from adequately challenging the evidence presented.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.
6. Venue is proper in the District of Minnesota under 28 U.S.C. § 1391(b) because the events giving rise to this action occurred in this district, and all Defendants reside or operate within this district.

## FACTUAL BACKGROUND

**Timeline of Events**

7. On August 5, 2024, Plaintiff, a third-year Ph.D. student, completed a 8-hour preliminary open book exam for doctoral candidacy. The exam was supposed to be graded by a committee of five professors including Defendant Neprash.
8. In late August 2024, Defendant Neprash generated a ChatGPT response by inputting the exam questions into ChatGPT and edited it at least ten times to increase its similarity to the Plaintiff's answers. The altered ChatGPT response, referenced in **Exhibit 3: Neprash Generated ChatGPT Answer**, was then shared with other grading professors who graded the exam.
9. Despite the fact that the AI detector tool GPTZero, used by the University in this case, classified Plaintiff's full exam as human-generated (**Exhibit 9: Full Exam AI Probability Score**), the similarity between Defendant Neprash's altered ChatGPT response and Plaintiff's exam answers led three grading professors to conclude that Plaintiff had used artificial intelligence during the exam.
10. On August 29, 2024, one professor from the grading committee reported the case to the Office for Community Standards (OCS) at the University . The report included **Exhibit 3: Neprash Generated ChatGPT Answer** and **Exhibit 4: Side-by-Side Comparison Submitted to OCS in Late August 2024**, which highlighted similarities between Plaintiff's exam answers and Defendant Neprash's altered ChatGPT response. In the report, the accusing professors recommended that the University expel Plaintiff.
11. On November 26, 2024, following the CCSB hearing, Plaintiff was notified of his expulsion. During the hearing, Defendant Neprash repeatedly denied altering the evidence. Despite repeated requests from Plaintiff's student advocate for access to the original ChatGPT log, Defendant Neprash only submitted the original ChatGPT log link in the Zoom chat three minutes before the conclusion of the cross-examination. As a result, Plaintiff had no opportunity to review the ChatGPT log during the hearing and discovered the alterations only afterward.
12. On January 7, 2025, Defendant Scott Lanyon upheld the expulsion during the appeals process, despite admitting that altered evidence had been used. As a result of the expulsion.
13. On January 8, 2025, the University terminated Plaintiff's SEVIS record, causing Plaintiff to lose his student status and legal authorization to remain in the United States.

**Procedural Violations**

14. Defendant Neprash generated a ChatGPT response to Plaintiff's exam questions, edited it at least ten times to increase its similarity to Plaintiff's answers, and submitted it as evidence to accuse Plaintiff of academic dishonesty. A forensic analysis conducted by a professor in economics at Seattle University, referenced in **Exhibit 5: Forensic Analysis of Altered ChatGPT Evidence**, provides detailed evidence of these alterations.
15. Figures 1 and 2 illustrate two examples of the alterations. The left panel in each figure displays the original ChatGPT log provided to Plaintiff on November 26, 2024, during the CCSB hearing. The center panel shows the altered ChatGPT response submitted to the OCS in late August 2024 and subsequently used as evidence during the November 26 CCSB hearing. The right panel contains Plaintiff's original exam answer.

16. In one instance (Figure 1), the original ChatGPT response included an "in summary" section. However, in the version submitted by Defendant Neprash to the University, this "in summary" section was removed. Coincidentally, the Plaintiff's answer for the same question also lacks a summary section. Similarly, as shown in Figure 2, Defendant Neprash altered the formatting of her ChatGPT response by reducing the bold text and replacing it with italics in two instances. Correspondingly, the Plaintiff's answer to the same questions does not include bolded text either.
17. Figure 3 highlights the specific accusations brought by the University during the November 26 hearing. Points 2 and 3 in the University's argument cite the similarity between generated ChatGPT answer and plaintiff's answer in headings and the summaries as evidence of Plaintiff's alleged use of ChatGPT. These points directly correspond to the portions of Defendant Neprash's ChatGPT response that she had altered.

Figure 1: Comparison of Original ChatGPT Log, Altered ChatGPT Response Submitted to OCS, and Plaintiff's Exam Answer (Question 4)



4

Figure 2: Comparison of Original ChatGPT Log, Altered ChatGPT Response Submitted to OCS, and Plaintiff's Exam Answer (Question 1)



Figure 3: University Presentation Slide during CCSB Hearing

## Signs of LLM Use in Haishan Yang's Exam

- Unusually long answer, compared to recent prelims.

- Writing style is very structured (i.e., uses headings, subheadings, and bullet points throughout).

- Uses common phrasing for LLMs. Two instances of 'in summary' and one of 'in conclusion'.

- Noticeably identical or very similar text, when compared to ChatGPT output.

- Content that is non-standard for health economics (i.e., not in any of the papers on our prelim exam reading list), but does appear in the ChatGPT output

- Feels "voiceless" and does not read similarly to known examples of writing by this student.

18. During the CCSB hearing, Defendant Neprash repeatedly denied any alteration of evidence. **Exhibit 6: Transcript of CCSB Hearing on November 26, 2024,** documents the proceedings. As recorded on page 130, Plaintiff's student advocate, Roxanne Krietzman, generated a ChatGPT response on her own computer during the hearing. The generated response was significantly different from the ChatGPT evidence submitted by Defendant Neprash. The following exchange from the hearing illustrates this discrepancy.

    00:23:24.110 --> 00:23:33.240

    Roxanne S Krietzman: So I'm I'm seeing something@firstst I'm I'm seeing the

    difference between fonts. Did you alter the fonts

    204

    00:23:33.250 --> 00:23:38.730

    Roxanne S Krietzman: between the original generation and the document that you

    submitted to Ocs.

    205

    00:23:39.270 --> 00:23:39.880

    **Hannah T Neprash: No.**

    00:30:03.210 --> 00:30:06.569

    Hannah T Neprash: tell me how to export it, or if you would like to.

    247

    00:30:07.330 --> 00:30:09.699

    **Hannah T Neprash: and it is exactly the same output.**

19. Defendant JaneAnne Murray prematurely ended the cross-examination without allowing Plaintiff to address the altered evidence.
20. Defendant Dzik interrupted Plaintiff's advocate during cross-examination, preventing full exploration of how Neprash's ChatGPT evidence was generated.
21. Defendant Scott Lanyon, in his appeal decision, acknowledged that Plaintiff was not provided an opportunity to challenge the last-minute introduction of the ChatGPT evidence and admitted that the evidence had been altered. Despite these admissions, Defendant Lanyon upheld the expulsion decision. **Exhibit 7: Appeal Decision Letter** (page 4) includes the following statements by Defendant Lanyon:

    "I do not believe providing more time for Dr. Yang to explain his view of the relevance of the evidence would have affected the outcome"

    "Second, the alterations that Dr. Yang claims exist are such that they would not have impacted the analysis

of whether there was the use of AI here."

22. During the CCSB hearing, Defendant Neprash stated that Plaintiff's exam answer to Question 4 had an 89% probability of being AI-generated, as determined by ZeroGPT, according to page 21 of the **Exhibit 8: University Presentation Slide**. However, when Plaintiff used the same ZeroGPT tool, the AI probability score for Question 4 was found to be only 42%, as shown in **Exhibit 12: Question 4 AI Probability Score**. Without additional evidence to substantiate Defendant's claim, Plaintiff can only conclude that Defendant Neprash provided false evidence regarding the AI probability score.

23. During the CCSB hearing, Defendant Neprash claimed that other students' exam answers in previous years were much shorter than Plaintiff's, as indicated on page 4 of **Exhibit 8: University Presentation Slide**. However, Defendant Neprash did not provide the Plaintiff with the answers from other students to verify this claim.

**Impact on Plaintiff**

24. Plaintiff has been unable to complete his Ph.D. program.
25. Plaintiff's expulsion led to the termination of his SEVIS record and international student status, rendering him unable to legally remain in or return to the United States, causing significant financial and emotional distress.
26. Plaintiff's reputation has been severely damaged within the academic community due to widely publicized allegations.
27. Plaintiff was unable to participate in professional conferences and seminars, including the ASSA 2025 Annual Meeting held in early January 2025, which is widely regarded as the premier conference for economists and a crucial venue for networking and job interviews.
28. Due to the termination of his student status, Plaintiff lost an already agreed-upon contract for a research assistantship for the spring 2025 semester. This loss has immediately resulted in the forfeiture of a monthly income exceeding $2,000, a student tuition waiver worth over $15,000, and health insurance benefits.
29. Plaintiff also lost guarantee funding opportunity including full tuition waiver and stipend for 2025-2026 academic year at University.
30. Plaintiff has been forced to halt multiple ongoing research projects due to uncertainties about accessing critical data, maintaining working authorization, and securing future career prospects. These disruptions have severely hindered Plaintiff's academic and professional development.

---

**CAUSES OF ACTION**

**Count I: Violation of Fourteenth Amendment Due Process (42 U.S.C. § 1983)**

31. Defendants deprived Plaintiff of his due process rights through the following actions:

   a. **Relying on Altered Evidence**: Defendant Neprash submitted a ChatGPT response that she had edited at least ten times to increase its similarity to Plaintiff's exam answers. This

7

altered evidence was presented as genuine and directly influenced the findings against Plaintiff.

b. **Last-Minute Introduction of Critical Evidence**: During the CCSB hearing, Defendant Neprash provided the original ChatGPT log only three minutes before the conclusion of the cross-examination, leaving Plaintiff no meaningful opportunity to review or challenge the evidence.

c. **Premature Conclusion of the Hearing**: Defendant JaneAnne Murray prematurely ended the cross-examination, depriving Plaintiff of the opportunity to address critical evidence or raise concerns about its reliability.

d. **Interference During Cross-Examination**: Defendant Sharon Dzik interrupted Plaintiff's student advocate during the cross-examination, preventing a thorough exploration of how the altered ChatGPT evidence was generated.

e. **Unsubstantiated Claims About Exam Length**: Defendant Neprash claimed during the CCSB hearing that Plaintiff's exam answers were significantly longer than those of other students in prior years, as noted in **Exhibit 8: University Presentation Slide** (page 4). However, Defendant Neprash did not provide the other students' answers to verify this claim, denying Plaintiff the ability to challenge its validity.

f. **Misrepresentation of AI Probability Scores**: During the hearing, Defendant Neprash alleged that Plaintiff's Question 4 had an 89% probability of being AI-generated, as determined by ZeroGPT, according to **Exhibit 8: University Presentation Slide** (page 21). However, Plaintiff verified the same answer using ZeroGPT and found the AI probability score to be only 42%, as documented in *Exhibit 12: Question 4 AI Probability Score*. Defendant Neprash failed to provide additional evidence to support her claim, further compromising the integrity of the process.

g. **Failure to Address Procedural and Evidentiary Flaws on Appeal**: Defendant Scott Lanyon, in his appellate decision, admitted that the evidence was altered and that Plaintiff had no opportunity to challenge the last-minute introduction of critical evidence. Despite these admissions, Defendant Lanyon upheld the expulsion, ignoring the significant procedural and evidentiary flaws.

These actions collectively violated Plaintiff's due process rights by depriving him of a fair, impartial, and transparent disciplinary process.

## SUPPORTING DOCUMENTS

This Motion is supported by the following documents:

- Exhibit 1. Original Exam Question

- Exhibit 2. Plaintiff's Exam Answer
- Exhibit 3. ChatGPT Response Generated by Defendant Neprash
- Exhibit 4. Side by Side Comparison Submitted to OCS Late August, 2024
- Exhibit 5. Forensic Analysis of Altered ChatGPT Evidence
- Exhibit 6. Transcript of CCSB Hearing on November 26, 2024
- Exhibit 7. Appeal Decision Letter
- Exhibit 8. University Presentation Slide
- Exhibit 9. Full Exam AI Probability Score
- Exhibit 10. Question 1 AI Probability Score
- Exhibit 11. Question 3 AI Probability Score
- Exhibit 12. Question 4 AI Probability Score

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully requests that this Court grant the following relief:

32. **Reinstatement:**
    - Issue an order requiring Defendants to immediately reinstate Plaintiff to the Health Services Research, Policy & Administration Ph.D. program at the University, with full restoration of all rights, privileges, and academic standing.
    - Require Defendants to expunge all records of the disciplinary action and allegations of academic dishonesty from Plaintiff's academic record.
    - Allow Plaintiff to complete missed coursework, exams, and thesis work on an expedited timeline to mitigate delays in academic progress.
33. **Declaratory Relief:**
    - Declare that Defendants violated Plaintiff's Fourteenth Amendment due process rights and contractual obligations under the University's policies.
34. **Injunctive Relief:**
    - Enjoin Defendants from engaging in similar conduct in the future, including altering evidence and failing to provide fair disciplinary processes to students.
35. **Investigation and Apology:**
    - Order an independent investigation into the behavior of Defendants, particularly regarding the alteration of evidence, and require Defendants to issue a formal written apology to Plaintiff acknowledging the procedural and evidentiary misconduct.
36. **Compensatory and Punitive Damages:**

    **Total Damages Requested**: $4,510,000.

    a. **Lost Earnings Due to Incomplete Ph.D.** The Plaintiff asserts that completing a Ph.D. in Health Services Research significantly increases earning potential. The average salary for individuals with such a Ph.D. is $120,000 annually, compared to $30,000 annually in China, where Plaintiff's visa cancellation forces him to seek employment. Over an estimated 30-year working career, this represents a lifetime income loss of $2,700,000.

9

Plaintiff also lost guaranteed funding upon enrolling at the University , including a one-and-a-half semester tuition waiver valued at $50,000 and a potential research assistantship salary equivalent to around $60,000.

Total Financial Losses: $2,810,000.

b. **Reputational Harm:**

Plaintiff's expulsion, based on altered evidence, has caused severe harm to his academic and professional reputation. Widely publicized allegations of academic dishonesty, amplified by 3 million views on TikTok and YouTube and coverage by multiple media outlets, further exacerbated this damage. Plaintiff seeks $500,000 to address reputational harm.

c. **Emotional Distress:**

Plaintiff endured severe anxiety, humiliation, and mental health impacts as a direct result of Defendants' actions. Plaintiff seeks $200,000 for emotional distress damages.

d. **Punitive Damages:**

Given the egregious conduct by Defendants, including deliberate alteration of evidence, procedural violations, and denial of a fair hearing, Plaintiff seeks $1,000,000 in punitive damages to deter such misconduct in the future.

37. **Attorneys' Fees and Costs:**
    - Award Plaintiff reasonable attorneys' fees, costs, and any other expenses incurred in bringing this action, pursuant to 42 U.S.C. § 1988.
38. **Other Relief:**
    - Grant such other and further relief as the Court deems just and equitable.

---

# JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

---

# VERIFICATION

I, Haishan Yang, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on the 27th day of January, 2025.

**Date:** 01/27/2025
**Signature:** _____
Haishan Yang
Mailing Address: 2136 Ford Parkway #5244
Saint Paul, MN 55116
United States
Telephone Number: 435-932-1198