# UNIVERSITY OF MINNESOTA

*Office of the Executive Vice President and Provost*

234 Morrill Hall
100 Church Street S.E.
Minneapolis MN 55455-0110

Office: 612-625-0051
Fax: 612-624-3814

January 7, 2025

Haishan Yang
Sent electronically to yang7916@umn.edu

**PERSONAL AND CONFIDENTIAL**

Regarding Case Number: 2024029701

To All Parties in the CCSB Decision in the Matter of the University of Minnesota vs. Haishan Yang:

Attached is the final decision in response to the 12/09/2024 appeal to the Provost.

Bri Rosen
Executive Office and Administrative Specialist

CC:  JaneAnne Murray, Chair for CCSB
 Sharon Dzik, Office for Community Standards
 Roxanne Krietzman, Assistant Director - Student Advocacy
 Katie Jackson, Dean of Students
 John Lof, CCSB Secretary

**Driven to Discover**℠

# UNIVERSITY OF MINNESOTA

*Office of the Executive Vice President and Provost*

*234 Morrill Hall*
*100 Church Street S.E.*
*Minneapolis MN 55455-0110*
*Office: 612-625-0051*

January 7, 2025

**MEMORANDUM**

| | |
|---|---|
| TO: | Haishan Yang, Student-Appellant |
| | JaneAnne Murray, Chair, Campus Committee on Student Behavior |
| FROM: | Scott Lanyon |
| | Appellate Officer |
| RE: | *Final Decision on Appeal* |

Student-Appellant Haishan Yang appeals the November 26, 2024, decision of the Campus Committee on Student Behavior (CCSB), which found Dr. Yang responsible for violating Section IV, Disciplinary Offenses, Subdivision 1, Scholastic Dishonesty (Cheating), of the Board of Regents Policy: *Student Conduct Code*. Dr. Yang timely submitted his appeal on December 9, 2024. Dr. Yang challenges the CCSB Panel's findings and sanction. After careful review of all the materials in the matter, I affirm the decision of the CCSB.

**Background**

Student-Appellant Haishan Yang is a Ph.D. student in the School of Public Health. Dr. Yang was charged with using generative AI when he wrote his Health Economics preliminary exam. The preface to the exam stated as follows: "You may not use any sort of Artificial Intelligence tools, such as ChatGPT, in any part of this exam." The four health economics faculty who reviewed the exam determined that Dr. Yang had violated this directive, and that it was more likely than not that Dr. Yang had used generative AI on the exam. As a result, on August 29, 2024, Professor Ezra Golberstein submitted a scholastic dishonesty report to the Office for Community Standards (OCS).

Following its usual process, on September 3, 2024, OCS sent Dr. Yang a letter advising him of the scholastic dishonesty report and requesting that Dr. Yang meet with OCS to discuss the report. Dr. Yang, along with an academic advisor, met with OCS and, after the meeting, Dr. Yang submitted a 35-page response to the charges. OCS, in consultation with the involved faculty, considered Dr. Yang's responses and concluded that Dr. Yang's information did not change the initial determination. Accordingly, on November 4, 2024, OCS sent a letter to Dr.

Yang advising him that it had been determined that it was more likely than not that he had violated the Student Conduct Code and that the informal resolution being offered was expulsion. Dr. Yang then exercised his right to request a formal hearing before the CCSB.

**Driven to Discover**℠

**CCSB Decision**

The CCSB is the central body for the Twin Cities campus in matters involving violations of the *Student Conduct Code* and is composed of faculty, academic professional, and student members. On November 14, 2024, a panel of the CCSB convened for a hearing to consider whether Dr. Yang violated the *Student Conduct Code*: Section IV, Subdivision 1, Scholastic Dishonesty, and, if so, the appropriate sanction for the violation. Dr. Yang, who was represented by an advocate at the hearing, did not challenge any members of the convened panel.

At the hearing, both parties made opening statements before witnesses were called to testify. The University Presenter presented two witnesses live and submitted statements (prior to the hearing) of three additional witnesses. The University Presenter also introduced exhibits. Dr. Yang, through his advocate, had the opportunity to question the live witnesses and respond at the hearing to the written statements. Dr. Yang's advocate called Dr. Yang as a witness and presented exhibits.

The Panel met to deliberate immediately following the conclusion of the hearing and held a vote on the alleged violation. They concluded by a vote of 5-0 that Dr. Yang was responsible for violating Section IV, Disciplinary Offenses, Subdivision 1, Scholastic Dishonesty, of the *Student Conduct Code*. In its November 26, 2024, decision letter, the Panel explained its decision as to the findings of responsibility as follows:

> The panel unanimously agreed there was a violation of Subdivision 1 and that more likely than not, you had used some kind of artificial intelligence (AI) software to develop answers for the exam. The panel found the University's presentation to be compelling. Panel members credited the ability of the testifying professors to identify AI generated papers. The panel agreed that the documents used in the exam that were demonstrated to be irrelevant to the exam questions raised significant questions about the use of AI. The panel also noted that the lack of citations, a pattern of continued excuses about exam errors, and inconsistencies in your testimony to be problematic.

As to sanction, the Panel wrote:

> The panel ultimately decided to uphold the University's recommended outcome of expulsion and a disciplinary hold being placed on your record. Panelists resonated with faculty statements that trust would be essential to continuing in the program. However, after using AI on the exam, panelists agreed that it would be extremely difficult for that trust to be reestablished.

**Appeal and Decision**

Dr. Yang raises three grounds for appeal: (1) new evidence exists that was not previously available to the appealing party and that is sufficient to affect the outcome; (2) there was a significant procedural error sufficient to affect the outcome; and (3) the outcome was grossly disproportionate to the offense.

Given the nature of Dr. Yang's arguments on appeal, I will note as a prefatory statement that an appeal is not intended or allowed to be a re-hearing of the matter below. It is the CCSB panel, and the CCSB panel alone, that evaluates issues of credibility and, for the most part, decides the relative weight to place on different pieces of evidence. As the appellate officer, my role is only to consider the specific grounds allowable on appeal, which I do below.

I.   **New Evidence**

Dr. Yang first argues that there is new evidence that was not previously available to him that is sufficient to affect the outcome. The standard on appeal has two components. First the evidence had to have been previously unavailable to the appealing party and, second, that evidence must be sufficient to affect the outcome.

The new evidence, asserts Dr. Yang, are "Chat GPT-generated answers prepared by Golberstein and a link to the original ChatGPT answer from Neprash." This evidence was submitted late in the hearing, which Dr. Yang argues did not provide him with sufficient time to use that evidence in his defense.

The record is not clear as to whether the information was "previously unavailable" to Dr. Yang before it was ultimately provided to the panel. Dr. Yang does not say, and the record does not reflect, whether Dr. Yang requested this information prior to the hearing. But the information was, in fact, provided to the panel, at the urging of Dr. Yang's advocate, prior to deliberation. Thus, it had the information when it was deliberating and could compare it to the other evidence provided during the hearing. Thus, for purposes of the standard on appeal, I do not find that this is "new evidence" as it was, in fact, part of the record.

Further, even if I deemed the timing here to be sufficient to call this evidence "new," Dr. Yang has not satisfied this ground for appeal, as I do not believe earlier submission of the evidence would have affected the outcome. First, as noted above, the panel actually had the evidence in its possession to evaluate, and I do not believe providing more time for Dr. Yang to explain his view of the relevance of the evidence would have affected the outcome. Dr. Yang would have argued that this evidence shows or suggests that Dr. Neprash "intentionally fabricated a version of ChatGPT's response to mimic" his answer. I do not find this argument to be credible. First, there is nothing in the record to suggest any motivation for Dr. Neprash to act contrary to the interests of Dr. Yang. Dr. Yang, had he believed Dr. Neprash was biased against him, could have challenged her inclusion on the panel that reviewed his prelim exam, but there is nothing in the record suggesting he did so. Second, the alterations that Dr. Yang claims exist are such that they would not have impacted the analysis of whether there was the use of AI here. The same markers of the use of AI (for example, the unusually long answer, structured writing style, non-standard content for the field, a writing style/voice that is dissimilar to other written assignments by the student) are present, regardless.

Dr. Yang, on appeal, has asked that I consider analysis of a faculty member from Seattle University regarding differences between the ChatGPT output at the link provided and the information submitted by the faculty here. I have reviewed this material, but I do not find it to be an appropriate

addition to the record at this time. Further, and in any event, it does not provide any information that was not before the panel during their deliberations, as discussed above.

I therefore reject this ground for appeal.

### II.     Procedural Errors

Dr. Yang asserts that procedural errors warrant reversal of the CCSB decision. The specific ground on appeal is as follows:

> There was significant procedural error sufficient to affect the outcome (e.g., lack of notice, opportunity to be heard, or opportunity to challenge information). A procedural error is not a basis for sustaining an appeal unless it was significant enough to affect the outcome.

Dr. Yang first argues it was a procedural error for Dr. Neprash to submit a link to her original ChatGPT output near the end of the hearing. I do not find a procedural error here. The record indicates that Dr. Neprash was unable to initially transmit a link, but ultimately was able to figure out how to do so at the request of Dr. Yang's advocate, and did so prior to the close of the hearing. There is simply no procedural error here. Further, as discussed above, I do not believe the timing of the submission of the link could have affected the outcome.

Dr. Yang also asserts there was a procedural error because, he argues, the Chair did not act impartially during the hearing. I find no evidence to support this argument. Dr. Yang's argument includes his pointing out his claim that the Chair "interrupted me and my advocate, Krietzman, more than seven times while we were speaking," and only interrupted the University presenter or a University witness once. Context matters, and simply counting up the number of "interruptions" is not sufficient to show bias. The Chair's role, in part, is to ensure that the hearing moves efficiently, and within the time frames agreed upon by the parties. A review of the record as a whole shows that that is what the Chair was doing, and it so happened that Dr. Yang and his advocate needed more prompting in this regard than the University.

Finally, Dr. Yang asserts that he was not given sufficient time to present his case. The record reflects that the time to be provided to each party was detailed and agreed-upon at the pre-hearing conference. Dr. Yang was provided fair and equitable time according to the pre-hearing agreements, and was also allowed to submit written evidence to support his position as well. Therefore, there was no procedural error.

### III.    Not based on substantial information

Dr. Yang asks for reversal of the decision based on a lack of substantial information. This ground for appeal is as follows:

> The student conduct decision was not based on substantial information. Substantial information means relevant information that a reasonable person might accept as

adequate to support a conclusion. In making this determination, the appellate officer must respect the credibility determinations of the hearing body and must not substitute the officer's judgment for the hearing body. Rather, the appellate officer must determine whether the hearing body's decision was unreasonable (i.e., arbitrary) in light of the information presented.

I find that much, if not all, of Dr. Yang's argument is asking me to substitute my judgment for that of the Panel's.  Dr. Yang and his advocate had a full and fair opportunity to present their arguments to the Panel, and the Panel unanimously rejected those arguments and concluded that it was more likely than not that he violated the Student Conduct Code.  I cannot say here that this conclusion was unreasonable in light of the information presented.

The evidence presented to the Panel included several elements.  This included the fact that GPTZero indicated a high probability that Dr. Yang's answer to the third question of the exam was generated at least in part by generative AI.  Dr. Yang challenges the ethics and efficacy of the use of an AI detector such as GPTZero, and he presented his arguments against it at the hearing, including by submitting a peer-reviewed article on the topic to the panel.  The GPTZero output, however, was just one piece of evidence presented.  The record reflects that the faculty also relied on their own analysis of Dr. Yang's answer, using factors published by OCS on its website regarding how to identify AI usage.  As one example, the faculty found that Dr. Yang's answer was inconsistent with Dr. Yang's prior submissions.  Further, they also noted that his answer was inconsistent with how students have historically answered questions in the written prelim exam, including with respect to formatting and organization.  I therefore find that there was sufficient evidence here that a "reasonable person might accept as adequate to support" the finding here.

### IV.  Sanction

Dr. Yang challenges the CCSB Panel's outcome of expulsion as being grossly disproportionate to the offense.  Dr. Yang argues that the reason provided for the outcome--that trust had been destroyed--is not a legitimate basis for the outcome here and that there is no basis for reaching a conclusion as to the "seriousness" of the conduct.

A written preliminary exam is a significant step in the process of earning a Ph.D., where the Ph.D. candidate is to demonstrate their understanding of the subject matter taught up to that point.  The exam here had no proctor, thus placing trust in the student to follow the rules for the exam, which were clear and included not using generative AI in any fashion.  Dr. Yang violated this trust, and presented work as his own that was more likely than not generated by AI.  Contrary to Dr. Yang's assertion, this is "serious scholastic dishonesty" under the Student Conduct Code.

I disagree with Dr. Yang's assertion that trust is not an appropriate consideration.  PhD research is, by definition, exploring new ideas and often involves development of new methods. There are many opportunities for an individual to falsify data and/or analysis of data. Consequently, the academy has no tolerance for academic dishonesty in PhD programs or among faculty. A finding of dishonesty not

only casts doubt on the veracity of everything that the individual has done or will do in the future, it also causes the broader community to distrust the discipline as a whole. In conclusion, I find the outcome of expulsion to be appropriate to the offense.

**Conclusion**

    The decision of the CCSB is affirmed.