# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Haishan Yang, <br><br> Plaintiff, <br><br> v. <br><br> Hannah Neprash, Scott Lanyon, JaneAnne Murray, and Sharon Dzik, in their individual and official capacities, <br><br> Defendants. | Civil No. 25-cv-00089-JMB-SGE <br><br><br> **MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

INTRODUCTION

Plaintiff Haishan Yang respectfully submits this Memorandum of Law in Opposition to Defendants' Motion to Dismiss (Doc. 29) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants Hannah Neprash, Scott Lanyon, JaneAnne Murray, and Sharon Dzik (collectively, "Defendants" or "University Officials") seek to dismiss Plaintiff's First Amended Complaint (Doc. 10), which asserts a claim under 42 U.S.C. § 1983 for violations of his Fourteenth Amendment due process rights. Defendants' motion rests on three primary arguments: (1) Eleventh Amendment immunity bars Plaintiff's claims for money damages; (2) Plaintiff failed to exhaust administrative remedies and fails to state a due process claim; and (3) qualified immunity shields Defendants from liability in their individual capacities. Each argument fails as a matter of law and fact

1

when viewed through the lens of Plaintiff's well-pleaded allegations, which must be accepted as true at this stage.

First, while the Eleventh Amendment limits official-capacity claims for damages, Plaintiff's claims against Defendants in their *individual capacities*—supported by specific allegations of personal misconduct—are not barred. Second, Plaintiff's procedural due process claim does not require exhaustion of state remedies under binding precedent, and the complaint plausibly alleges a deprivation of due process through Defendants' reliance on altered evidence, denial of a fair hearing, and other procedural violations. Third, Defendants are not entitled to qualified immunity because the right to a fair disciplinary process free from altered evidence and arbitrary decision-making was clearly established at the time of the violations. Accordingly, this Court should deny Defendants' motion in its entirety.

---

LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must accept all factual allegations as true, drawing all reasonable inferences in Plaintiff's favor, and may not dismiss unless it appears beyond doubt that Plaintiff can prove no set of facts entitling him to relief. *Id.*; *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th

Cir. 1990). Legal conclusions are not entitled to the same presumption, but well-pleaded facts supporting those conclusions must be credited. *Iqbal*, 556 U.S. at 679.

---

ARGUMENT

I. The Eleventh Amendment Does Not Preclude Plaintiff's Claims Against Defendants in Their Individual Capacities or Requests for Prospective Injunctive Relief

Defendants contend that the Eleventh Amendment prohibits Plaintiff's claims for monetary damages against them in their official capacities. (Defs.' Mem. at 12-13.) This assertion, while accurate as a general proposition, does not justify dismissal of the entire complaint. Plaintiff asserts claims against Defendants in both their official and individual capacities, and the Eleventh Amendment presents no impediment to individual-capacity claims or prospective injunctive relief claims against state actors in their official capacity.

A. Individual-Capacity Claims Are Unaffected by Sovereign Immunity

The Eleventh Amendment affords states and their officials, when acting in their official capacities, immunity from federal suits for damages absent state consent or congressional abrogation. *Raymond v. Bd. of Regents of Univ. of Minn.*, 140 F. Supp. 3d 807, 813 (D. Minn. 2015). However, this immunity does not extend to actions for damages against state officials in their individual capacities. In such cases, liability attaches to the officials' personal conduct, not the state's treasury. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Plaintiff alleges specific, actionable misconduct by each Defendant in their

individual capacities: Neprash intentionally manipulated evidence (Am. Compl. ¶ 14); Murray improperly curtailed cross-examination (Id. ¶ 19); Dzik impeded Plaintiff's advocate and introduced prejudice letters (Id. ¶ 20, Decl. ¶¶ 6 ); and Lanyon affirmed the expulsion despite recognizing procedural deficiencies (Id. ¶ 21). These allegations, which must be accepted as true at this stage, substantiate personal liability and render Defendants' contention that the complaint lacks sufficient supporting facts (Defs.' Mem. at 13 n.2) untenable. Accordingly, Plaintiff's individual-capacity claims for damages remain viable.

B. Prospective Injunctive Relief Is Permissible Under the *Ex parte Young* Exception

The Eleventh Amendment does not bar suits seeking prospective injunctive relief against state officials to redress ongoing constitutional violations. *Ex parte Young*, 209 U.S. 123, 159-60 (1908); *accord Green v. Mansour*, 474 U.S. 64, 68 (1985). Plaintiff requests reinstatement to his Ph.D. program, expungement of his disciplinary record, and an injunction to prevent future misconduct (Am. Compl. ¶¶ 32-34)—remedies that are wholly prospective and thus fall squarely within the *Ex parte Young* exception. Defendants offer no argument to the contrary, and these official-capacity claims for injunctive relief are therefore preserved.

Thus, the Eleventh Amendment restricts only Plaintiff's claims for damages against Defendants in their official capacities, leaving intact the individual-capacity claims and injunctive relief claims against Defendants in their professional capacity. Consequently, dismissal of the entire complaint is unwarranted.

II. Plaintiff States a Valid Due Process Claim and Is Not Required to Exhaust State Remedies.

Defendants argue that Plaintiff's due process claim fails because (1) he did not exhaust administrative remedies via a writ of certiorari to the Minnesota Court of Appeals, and (2) he received sufficient process. (Defs.' Mem. at 13-17.) Both arguments misapply the law and disregard the complaint's allegations.

A. Exhaustion of State Remedies Is Not Required for § 1983 Procedural Due Process Claims Involving Fundamental Fairness.

Defendants assert that Plaintiff must exhaust state remedies by seeking certiorari review before filing a § 1983 claim, citing *Wax 'n Works v. City of St. Paul*, 213 F.3d 1016 (8th Cir. 2000). (Defs.' Mem. at 14-15.) This misreads the law. The Supreme Court has long held that "exhaustion of state administrative remedies is not a prerequisite to an action under § 1983," even for procedural due process claims. *Patsy v. Bd. of Regents of Fla.*, 457 U.S. 496, 516 (1982); *see also Felder v. Casey*, 487 U.S. 131, 147 (1988) (reaffirming *Patsy*). The Eighth Circuit cases Defendants cite apply only to claims challenging the adequacy of *available* state procedures, not the fairness of the process actually provided. *See Wax 'n Works*, 213 F.3d at 1019-20 (exhaustion required where plaintiff alleged lack of a remedy, not denial of fair process); *Hopkins v. City of Bloomington*, 774 F.3d 490, 492 (8th Cir. 2014) (same).

Here, Plaintiff does not challenge the University's disciplinary framework but alleges that Defendants *deviated* from it by using altered evidence, denying him a fair hearing, and upholding an arbitrary decision. (Am. Compl. ¶ 31.) Such claims of "random and unauthorized acts" by state officials require no exhaustion, as federal courts assess whether the process afforded—not hypothetical remedies—met constitutional standards. *Zinermon v. Burch*, 494 U.S. 113, 126 (1990); *see also Monroe v. Ark. State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007) (no exhaustion required where due process claim focused on fairness of hearing). Certiorari review, limited to the administrative record, cannot cure Defendants' alleged misconduct (e.g., evidence tampering), making it an inadequate remedy. *Chronopoulos v. Univ. of Minn.*, 520 N.W.2d 437, 441 (Minn. Ct. App. 1994). Thus, exhaustion does not bar Plaintiff's claim.

B. The Complaint Plausibly Alleges a Deprivation of Procedural and Substantive Due Process

Defendants assert that Plaintiff received adequate process through notice, a hearing, and an appeal. (Defs.' Mem. at 15-17.) This contention ignores the declaration's detailed allegations of pervasive unfairness, which render the disciplinary process constitutionally deficient under both procedural due process—ensuring a fair and impartial procedure—and substantive due process—protecting against arbitrary or fundamentally unjust outcomes. These claims are not speculative but grounded in specific, documented misconduct.

Procedural Due Process: Procedural due process in university disciplinary proceedings mandates notice, a meaningful opportunity to be heard, an impartial tribunal, and decisions based on reliable evidence. See Goss v. Lopez, 419 U.S. 565, 579 (1975) (requiring notice and hearing for disciplinary suspensions); Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (balancing private interest, risk of erroneous deprivation, and government interest); Monroe v. Ark. State Univ., 495 F.3d 591, 595-96 (8th Cir. 2007) (fair hearing and impartiality required). For disciplinary dismissals like Plaintiff's, involving scholastic dishonesty rather than academic failure, these protections are heightened. See Bd. of Curators of Univ. of Mo. v. Horowitz, 435 U.S. 78, 85-86 (1978) (distinguishing disciplinary from academic dismissals); Nash v. Auburn Univ., 812 F.2d 655, 660-61 (11th Cir. 1987) (due process in disciplinary cases includes right to challenge evidence). Plaintiff's declaration reveals multiple violations:

1. Reliance on altered Evidence: Defendant Neprash generated a ChatGPT response and submitted Plaintiff's exam to an AI detector, then altered the ChatGPT output to mimic Plaintiff's answer. (Decl. ¶¶ 5, 17.) She denied these alterations during the hearing, despite their inconsistency with ChatGPT's non-replicable nature. (Decl. ¶ 17.) The use of falsified evidence taints the process. See Napue v. Illinois, 360 U.S. 264, 269 (1959) (due process violated by knowing use of false evidence); Mooney v. Holohan, 294 U.S. 103, 112 (1935) (deliberate deception undermines fairness); Miller v. Pate, 386 U.S. 1, 7 (1967) (fabricated evidence invalidates proceedings).

2. Denial of Confrontation Rights: Plaintiff was denied the opportunity to confront

key witnesses whose testimony formed the basis of the misconduct charge. Professors Huckfeldt and Carroll—who authored the two exam questions under suspicion—did not appear at the hearing, depriving Plaintiff of the chance to cross-examine them. (Decl. ¶¶ 20–21, 25.) In contrast, Professors Golberstein and Neprash, who wrote questions that raised no suspicion or were not answered by Plaintiff, were present and testified, despite documented conflicts of interest. (Decl. ¶¶ 10–11, 25.)

This selective presentation violated Plaintiff's right to due process. Courts have made clear that when credibility is central, cross-examination is essential. See Greene v. McElroy, 360 U.S. 474, 496–97 (1959); Goldberg v. Kelly, 397 U.S. 254, 270 (1970); Doe v. Univ. of Cincinnati, 872 F.3d 393, 401 (6th Cir. 2017); *Jenkins v. McKeithen, 395 U.S. 411, 429 (1969)* (due process requires that a person investigated by an accusatory body be afforded the right to confront and cross-examine witnesses against them).

Plaintiff was also unable to question Associate Dean Wattenberg and Professor Mason, whose prejudicial letters were cited to justify expulsion. Wattenberg's letter, read nearly in full at the hearing, came despite her lack of an official role. (Decl. ¶¶ 6–8.) Mason's letter improperly referenced a withdrawn allegation. (Decl. ¶ 9.) These procedural failures denied Plaintiff a fair hearing.

3. During cross-examination of Neprash regarding the ChatGPT evidence, University

representative Dzik interrupted Plaintiff's advocate, Krietzman, and Hearing Chair Murray permitted an unrecorded three-minute breakout session excluding Plaintiff and panel members. (Decl. ¶¶ 28.) University procedures mandate a fully recorded hearing and prohibit such interruptions, yet this violation was not rectified. Even if the breakout session itself does not independently constitute a due process violation, its consequence was to halt Plaintiff's line of questioning into the generation of the ChatGPT evidence. Plaintiff's inability to probe Defendants about the evidence underpinning the initial allegation—evidence inherently unreliable—deprived him of a meaningful opportunity to challenge its validity, contravening procedural fairness. *See Morgan v. United States*, 304 U.S. 1, 18 (1938) ("The right to a hearing embraces … a reasonable opportunity to know the claims of the opposing party and to meet them."). This obstruction undermined the integrity of the hearing process.

4. Compromised Impartiality Undermined the Hearing: The disciplinary hearing was marred by pervasive bias and conflicts of interest that fatally compromised its fairness. Wattenberg, wielding institutional authority as a senior administrator, issued a letter explicitly directing the expulsion recommendation, which directly conflicted all panel members—including a School of Public Health professor under her supervision—by pressuring them to align with her predetermined outcome. (Decl. ¶ 8.) Further, Neprash and Golberstein, who both served as witnesses during the hearing, introduced additional bias through their documented conflicts with Plaintiff. These entanglements tainted the proceeding, denying

9

Plaintiff an impartial tribunal. Due process demands an unbiased decision-maker, free from actual or apparent conflicts. See Gibson v. Berryhill, 411 U.S. 564, 579 (1973) (a biased tribunal violates due process when decision-makers have a direct stake in the outcome); Withrow v. Larkin, 421 U.S. 35, 47 (1975) (fairness is undermined by actual bias or the intolerable risk of prejudice); Tumey v. Ohio, 273 U.S. 510, 523 (1927) (due process is breached when a judge has a "direct, personal, substantial pecuniary interest" in the result); In re Murchison, 349 U.S. 133, 136 (1955) (no one "can be a judge in his own cause" when prior involvement biases the proceeding). This confluence of institutional pressure and misleading testimony rendered the hearing constitutionally defective.

Substantive Due Process: Substantive due process prohibits arbitrary or conscience-shocking governmental action that infringes on fundamental rights, such as the property interest in continued education or the liberty interest in reputation. See Regents of Univ. of Mich. v. Ewing, 474 U.S. 214, 223 (1985) (recognizing potential substantive due process claim in academic context); Rochin v. California, 342 U.S. 165, 172 (1952) (arbitrary action must shock the conscience); Harrah Indep. Sch. Dist. v. Martin, 440 U.S. 194, 198 (1979) (substantive due process applies to capricious deprivations). Plaintiff's expulsion, based on manipulated evidence and an unfair process, plausibly violates this standard:

1. Arbitrary Expulsion Based on Subjective Trust: At the conclusion of the hearing, Defendant Neprash justified Plaintiff's expulsion by citing "trust," a rationale

echoed in the hearing decision letter and later referenced in the appeal decision. (Decl. ¶ 30.) Yet the University's Student Conduct Code does not recognize "trust" as a basis for expulsion, exposing the decision's disconnect from established policy. Allowing a professor to wield such a personal, undefined metric as grounds for expulsion vests them with unfettered discretion, rendering the process capricious and unpredictable. This subjectivity finds a compelling critique in the words of Professor Bryan Dowd (Decl. ¶ 31.). His seasoned perspective underscores that invoking trust as a rationale marks a stark and unjustifiable departure from academic norms. Due process forbids such standardless judgments, demanding objective, evidence-based criteria rooted in clear rules. See Board of Curators of Univ. of Mo. v. Horowitz, 435 U.S. 78, 91-92 (1978) (academic dismissals must eschew arbitrariness); Regents of Univ. of Mich. v. Ewing, 474 U.S. 214, 225 (1985) (substantive due process guards against decisions lacking professional judgment); Flemming v. Nestor, 363 U.S. 603, 611 (1960) (arbitrary action violates due process); Wolff v. McDonnell, 418 U.S. 539, 558 (1974) (disciplinary findings require "some evidence" tied to defined standards). Neprash's reliance on the nebulous concept of trust, devoid of any rational tie to the Conduct Code, contravenes these principles, rendering Plaintiff's expulsion a profound violation of fair process.

The decision was so irrational and arbitrary that it effectively boiled down to: "We trust the Plaintiff less, so we expel him"—a logicless standard that cannot survive

constitutional scrutiny. If, in a future hearing, the decision maker simply happens to trust the next accused student more, could that lead to a lesser penalty or even an exoneration? The subjectivity of trust leaves the process open to inconsistent, biased, and unpredictable outcomes, which undermines fairness and due process.

2. Bad Faith and Malice in Disciplinary Proceedings: The University's disciplinary process was tainted by bad faith and malice, as demonstrated by Professor Neprash's false statement during the hearing, in which she denied having a prior conflict with the Plaintiff despite documented evidence to the contrary (Decl. ¶¶ 14–16). Her denial served to obscure her alteration of ChatGPT output and potentially manipulated AI detector results, while she simultaneously claimed Plaintiff's exam was suspiciously long—yet failed to provide any comparative data from other students' responses (Decl. ¶ 35). This selective and unverifiable claims making, combined with the University's reliance on previously withdrawn allegations, strongly supports the inference that the outcome was predetermined, not the product of a rational or neutral evaluation.

This conduct exceeds mere procedural irregularity and reflects a deliberate distortion of fact-finding, violating the Plaintiff's right to substantive due process. Courts have long held that arbitrary and discriminatory exclusions from academic or professional opportunities violate constitutional protections. See Schware v. Board of Bar Examiners, 353 U.S. 232, 239 (1957) (excluding an individual from a profession on arbitrary grounds violates due process); Bd. of Curators v.

Horowitz, 435 U.S. 78, 91–92 (1978) (Powell, J., concurring) (irrational academic decisions may give rise to a substantive due process claim).

Further, Professor Dow's letter to the Provost's Office explicitly references past efforts to expel Plaintiff and characterizes the faculty's conduct as marked by unprecedented hostility (Decl. ¶¶ 12–16). This history—paired with a prior apology from the University and legal agreements promising not to pursue further disciplinary action—provides powerful evidence of malicious intent and retaliatory motive. Such a course of conduct rises to the level of conscience-shocking abuse of authority, violating substantive due process under County of Sacramento v. Lewis, 523 U.S. 833, 846–47 (1998).

3. The University's disciplinary process has not only been arbitrary and capricious but also irrational in its disregard for established academic norms. Defendant Neprash's use of generative AI to generate a ChatGPT response and subsequently submit the Plaintiff's exam answer to an AI detection tool violates the University of Minnesota's explicit policy, which prohibits the use of generative AI for grading and disciplinary decision-making. The University's policy clearly states that, "The University of Minnesota does not endorse any AI detection tool at the moment, and it is NOT recommended to use AI tools to scan student work" (Decl. ¶¶ 5). This violation of established policy inherently reflects a substantial departure from accepted academic norms, as it disregards the University's own rules and undermines the standards for fair and rational academic decision-

making.

In Mills v. City of Saginaw, 614 F.3d 495, 498 (6th Cir. 2010), the court emphasized that truly irrational conduct—something more than arbitrary or capricious—violates constitutional due process. Similarly, in Regents of Univ. of Mich. v. Ewing, 474 U.S. 214, 225 (1985), the Supreme Court noted that while courts defer to faculty decisions, they should not uphold decisions that are a substantial departure from accepted academic norms. Here, Defendant Neprash's actions not only violate the University's policy but also reflect a clear and substantial departure from the accepted academic norms of rational, rule-based decision-making, thus rendering the disciplinary process constitutionally flawed.

---

III. Qualified Immunity Does Not Protect Defendants

Defendants assert qualified immunity, claiming Plaintiff's due process rights were not clearly established. (Defs.' Mem. at 17-18.) This defense collapses. The rights were well-defined by August 2024, and allegations of intentional misconduct and malice bar immunity.

A. Rights Were Clearly Established

Qualified immunity applies only if a violated right was not clearly established. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Here, precedent cemented three rights: (1) a fair

hearing with confrontation (Goss v. Lopez, 419 U.S. 565, 579 (1975); Doe v. Univ. of Cincinnati, 872 F.3d 393, 401 (6th Cir. 2017)), violated by blocking Plaintiff's cross-examination of key witnesses (Decl. ¶¶ 20) and ChatGPT evidence inquiry (Decl. ¶¶ 28); (2) protection from altered evidence (Napue v. Illinois, 360 U.S. 264, 269 (1959)), breached by Neprash's ChatGPT alteration (Decl. ¶¶ 17); and (3) freedom from arbitrary expulsion (Regents of Univ. of Mich. v. Ewing, 474 U.S. 214, 223 (1985)), undermined by a subjective "breach of trust" rationale (Decl. ¶ 30). Defendants had clear notice. Hope v. Pelzer, 536 U.S. 730, 741 (2002).

B. Intent and Malice Defeat Immunity

Immunity fails when officials act with intent or malice. Hunter v. Bryant, 502 U.S. 224, 229 (1991); Crawford-El v. Britton, 523 U.S. 574, 589 (1998) (malice can preclude immunity where it drives constitutional harm). Plaintiff alleges Neprash falsified evidence and denied a prior conflict (Decl. ¶¶ 14-17), Murray and Dzik deliberately obstructed his defense and introduced prejudiciary letters (Decl. ¶¶ 6, 28), and Lanyon endorsed a biased process —acts reflecting not just intent but malice, especially given Neprash's bad-faith deception and the University's reliance on withdrawn allegations. Such conduct, far from mere error, negates immunity. Malley v. Briggs, 475 U.S. 335, 341 (1986).

CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants' Motion to Dismiss. The Eleventh Amendment does not bar individual-capacity claims or claims for injunctive relief against officials in their official capacities. Plaintiff's due process claim is viable without exhaustion and well-pleaded, and qualified immunity does not apply given the clearly established rights at stake and Defendants' alleged misconduct.

Date: April 7, 2025                                             Haishan Yang

2136 Ford Parkway #5244,

Saint Paul, MN 55116

(435) 932-1198

Haishan1121@gmail.com