UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Haishan Yang, | Civil No. 25-cv-00089-JMB-SGE |
| Plaintiff, | |
| v. | **REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |
| Hannah Neprash, Scott Lanyon, JaneAnne Murray, and Sharon Dzik, in their individual and official capacities, | |
| Defendants. | |

---

In his brief in opposition to the motion of Defendants Hannah Neprash, Scott Lanyon, JaneAnne Murray, and Sharon Dzik ("University Officials") to dismiss his amended complaint, Plaintiff Haishan Yang attempts to impermissibly amend his complaint by way of a declaration to ask this Court to make inference after inference in his favor while also substituting his personal judgment for those of decisionmakers at the University. While this Court, on a motion to dismiss, may draw inferences in favor of the non-movant, any inference drawn must be reasonable. And even drawing reasonable inferences in Yang's favor, he has not stated a constitutional claim, and his claims are barred by the University Officials' Eleventh Amendment immunity and qualified immunity. Therefore, the University Officials respectfully ask the Court to dismiss with prejudice Yang's amended complaint.

**ARGUMENT**

At the outset, the University Officials note that Yang has submitted a declaration in support of his opposition to their motion, in which he makes factual assertions and to which he appends 13 exhibits, the majority of the contents of which are not pleaded in his amended complaint. (Yang Decl. in Opp'n to Mot. To Dismiss (Doc. 43).) The Court should decline to consider these documents at this stage of the proceedings, because to do so would convert this Rule 12 motion to dismiss into a Rule 56 motion for summary judgment. *See Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012).

Yang's amended complaint must be dismissed because he has both failed to exhaust his administrative remedies and has failed to state a due process claim, and because his individual-capacity claims are barred by qualified immunity.

**1.      Yang has failed to assert that his due process rights were violated.**

Yang asserts that he is not required to exhaust his administrative remedies, citing U.S. Supreme Court cases addressing § 1983 claims that do not assert an alleged deprivation of due process. *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 498 (1982) (evaluating a § 1983 claim asserting intentional discrimination on the basis of race and sex); *Felder v. Casey*, 487 U.S. 131, 135–36 (1988) (addressing a § 1983 claim asserting a racially motivated police beating and arrest). In doing so, he ignores the Eighth Circuit's express exception to the rule articulated in *Patsy*.

In *Keating v. Nebraska Public Power District*, the Eighth Circuit "recognized an exception to *Patsy*'s general rule that exhaustion of state remedies prior to bringing a section 1983 claim is not required." 562 F.3d 923, 929 (8th Cir. 2009). Specifically, it

held that, "[u]nder federal law, a litigant asserting a deprivation of *procedural due process* must exhaust state remedies before such an allegation states a claim under § 1983." *Id.* (internal quotation marks omitted) (citing *Wax 'n Works v. City of St. Paul*, 213 F.3d 1016, 1019 (8th Cir. 2000)). It is clear from Yang's amended complaint that he is asserting a procedural due process claim. (Am. Compl. (Doc. 10) ¶ 2, ¶¶ 14–23 (detailing alleged "procedural violations").) Therefore, following binding case law, Yang must exhaust his administrative remedies, and he has not alleged that he has. His amended complaint must therefore be dismissed.

Neither has Yang stated a procedural due process claim, even had he alleged that he exhausted his administrative remedies. He asserts that "[p]rocedural due process in university disciplinary proceedings mandates notice, a meaningful opportunity to be heard, an impartial tribunal, and decisions based on reliable evidence." (Pl.'s Mem. at 7.) And his complaint alleges that he received all of these protections: notice (Am. Compl. Ex. 7 (Doc. 10-7) at 2 (describing the Office for Community Standards notifying Yang of the charge against him), a meaningful opportunity to be heard (*id.* at 3 (describing the Campus Committee on Student Behavior hearing that Yang participated in), an impartial tribunal (*id.* (sharing that Yang did not challenge any of the panel members for bias)), and a decision based on reliable evidence (*id.* at 4–6 (analyzing the evidence and considering Yang's arguments on appeal of the panel decision)). In short, the face of his complaint alleges that he received the process he was due, and as such he has not stated a procedural due process claim.

Yang now asserts, citing his declaration (which the Court should not consider at this point), that he has stated a claim for deprivation of *substantive* due process. (Pl.'s Mem. at 10–14.) The Eighth Circuit, however, has not recognized a substantive due process cause of action for a student who has been subject to academic dismissal. *Schuler v. Univ. of Minn.*, 788 F.2d 510, 515 (8th Cir. 1986) (characterizing "whether a university student subject to academic dismissal" can assert a substantive due process claim as an open question); *Richmond v. Fowlkes*, 228 F.3d 854, 859 (8th Cir. 2000) ("Whether a student who is subject to academic dismissal may maintain a cause of action for the violation of his right to substantive due process remains an open question."); *Keefe v. Adams*, 840 F.3d 523, 533 (8th Cir. 2016) ("Following the Supreme Court's lead, we have repeatedly assumed without deciding that an academic dismissal may be challenged on substantive due process grounds but upheld the summary rejection of those claims, applying the Supreme Court's deferential standard.").

For example, in *Regents of the University of Michigan v. Ewing*, 474 U.S. 214, 223 (1985), the Supreme Court assumed without deciding that the plaintiff had a property interest that gave rise to a substantive right under the Due Process Clause. In deciding whether the University of Michigan had infringed the plaintiff's substantive rights, the Court noted that "[c]onsiderations of profound importance counsel restrained judicial review of the substance of academic decisions," and that judges may not override academic decisions "unless [the decision] is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not

4

actually exercise professional judgment." *Id.* at 225 (citing *Youngberg v. Romeo*, 547 U.S. 307, 323 (1982)).

Yang misstates the position of the Supreme Court when he asserts that due process "forbids such standardless judgments, demanding objective, evidence-based criteria rooted in clear rules." (Pl.'s Mem. at 11 (citing *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 91–92 (1978)). Instead, the Court observed that "a number of lower courts have implied in dictum that academic dismissals from state institutions can be enjoined if 'shown to be clearly arbitrary or capricious.'" *Horowitz*, 435 U.S. at 91 (quoting *Mahavongsanan v. Hall*, 529 F.2d 448, 449 (5th Cir. 1976)). At the same time, the Court declined to adopt an arbitrary and capricious standard. *See id.* at 91–92 ("Even assuming that the courts can review under such a standard an academic decision of a public educational institution, we agree with the District Court that no showing of arbitrariness or capriciousness has been made in this case."); *see also Ewing*, 474 U.S. at 222–23 (declining to decide whether courts can review academic decisions under a substantive due process standard).

Moreover, even if Yang can allege a substantive due process claim, "there is no violation of substantive due process unless misconduct of government officials that violates a fundamental right is 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience' of federal judges." *Keefe*, 840 F.3d at 533 (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)). Nothing Yang alleges falls

outside the bounds of traditional academic decision making or comes close to shocking the conscience.[1]

For example, Yang asserts that his expulsion, based on "unfair process, plausibly violates this standard" (Pl.'s Mem. at 10), but his pleading does not assert a policy violation. Yang attempts to characterize the reason for his expulsion as "trust" (*id.* at 10–12); however, his Amended Complaint makes clear that the Campus Committee on Student Behavior did not cite "trust" as a basis for Yang's expulsion (Am. Compl. Ex. 7 (Doc. 10-7) at 3). Rather, the Panel

> unanimously agreed . . . that more likely than not, [Yang] had used some kind of artificial intelligence (AI) software to develop answers for the exam. . . . Panel members credited the ability of the testifying professors to identify AI generated papers. The panel agreed that the documents used in the exam that were demonstrated to be irrelevant to the exam questions raised significant questions about the use of AI. The panel also noted that the lack of citations, a pattern of continued excuses about exam errors, and inconsistencies in your testimony to be problematic.

---

[1] Yang's claim that he has a property right in continued education (Pl.'s Mem. at 10) fails as neither the Supreme Court nor the Eighth Circuit has ever held that there is a protectable interest in a graduate education. *Martinson v. Regents of Univ. of Mich.*, 562 F. App'x 365, 375 (6th Cir. 2014) ("As an initial matter, we note that the Supreme Court never has held that the interest in a continued education at a public university constitutes a fundamental property or liberty interest that finds refuge in the substantive protections of the Due Process Clause."). Further, Yang cannot cite precedent to establish such a right. He relies on *Schware v. Board of Bar Examiners*, 353 U.S. 232, 239 (1957), which addresses the exclusion from a profession rather than from graduate education, and his reliance on Justice Powell's concurrence in *Horowitz*, 435 U.S. at 92–96 (Powell, J., concurring), for the idea that "irrational academic decisions may give rise to a substantive due process claim" is misplaced, because Justice Powell is silent as to substantive due process.

(*Id.*) Put another way, Yang's complaint demonstrates that he was dismissed because he impermissibly used AI, not because of "trust."

Additionally, Yang selectively references what he characterizes as "[t]he University's policy" and argues that, because a University website states that "[t]he University of Minnesota does not endorse any AI detection tool at the moment, and it is NOT recommended to use AI tools to scan student work," the use of an AI detection tool on his exam answer somehow violated University policy. (Pl.'s Mem. at 13). Not only does Yang, through his declaration, cite a website, and not a University policy, for this statement (Yang Decl. Ex. 3 (Doc. 43-3), Yang confuses the meaning of the word "recommended." The term "recommend" means "to suggest (an act or course of action) as advisable." (*Recommend*, *Merriam Webster's Dictionary* (11th ed. 2003).) Yang takes this recommendation as a mandate from the University. As such, the University Officials' actions do not "reflect a substantial departure from accepted academic norms" or a disregard for "the University's own rules." (Pl.'s Mem. at 13.).[2]

---

[2] The University Officials note that at least one of the cases that Yang cites in his memorandum does not exist. Specifically, they were unable to locate the following case: *Mills v. City of Saginaw*, 614 F.3d 495, 498 (6th Cir. 2010) (this entry in the Federal Reporter is instead *Mills v. City of Grand Fork*, 614 F.3d 495, 498 (8th Cir. 2010)). This is not altogether surprising, given that Yang has shared with KARE-11 News that he used ChatGPT to "help write his lawsuits." Chris Hrapsky, *PhD Student Expelled from University of Minnesota for Allegedly Using AI*, KARE-11 (Feb. 19, 2025) https://www.kare11.com/article/news/local/kare11-extras/student-expelled-university-of-minnesota-allegedly-using-ai/89-b14225e2-6f29-49fe-9dee-1feaf3e9c068. ChatGPT has been known to "hallucinate" or create non-existent cases when used to draft pleadings. *See, e.g.*, Molly Bohannon, *Lawyer Used ChatGTP in Court—And Cited Fake Cases. A Judge is Considering Sanctions*, FORBES (June 8, 2023) https://www.forbes.com/sites/mollybohannon/2023/06/08/lawyer-used-chatgpt-in-court-and-cited-fake-cases-a-judge-is-considering-sanctions/.

In short, Yang's allegations do not state a claim that the University Officials deprived him his right to substantive due process, assuming that such a cause of action in this context exists.

**2.     Yang's claims against the University Officials are barred by their qualified immunity.**

Despite Yang's assertion to the contrary, qualified immunity bars his claims against the University Officials in their individual capacities. Qualified immunity shields government officials acting in their individual capacity unless their "conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *New v. Denver*, 787 F.3d 895, 899 (8th Cir. 2015) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *Harlow*, 457 U.S. at 818 ("[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages."). For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Here, Yang cannot show that (1) the University Officials' conduct violated his rights and (2) the right in question was "clearly established at the time of the violation." *Hemminghaus v. Mo.*, 756 F.3d 1100, 1110 (8th Cir. 2014) (quoting *Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014) (per curiam) (internal quotation marks omitted)). Yang does not (and cannot) cite any case that establishes a deprivation of due process following an expulsion for scholastic dishonesty following an investigation, a hearing before a panel, and an independent appeal. All support for Yang's assertion that the University Officials

8

acted with malice or intent comes from his declaration (Pl.'s Mem. at 15), not from the Amended Complaint. Ultimately, Yang has failed to show that the University Officials are not subject qualified immunity.

## CONCLUSION

For the foregoing reasons, and for those stated in the University Officials' opening memorandum, they respectfully ask the Court to dismiss with prejudice Yang's amended complaint.

Dated: April 21, 2025

DOUGLAS R. PETERSON
General Counsel
University of Minnesota

By: s/ Carrie Ryan Gallia
Carrie Ryan Gallia (#0390479)
Senior Associate General Counsel
360 McNamara Alumni Center
200 Oak Street S.E.
Minneapolis, MN 55455-2006
ryang001@umn.edu
(612) 624-4100

*Attorneys for Defendants*