UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Haishan Yang, | Civil No. 25-cv-00089-JMB-SGE |
| Plaintiff, | |
| vs. | **DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT** |
| Hannah Neprash, Scott Lanyon, JaneAnne Murray, and Sharon Dzik, in their individual and official capacities. | |
| Defendants. | |

Plaintiff Haishan Yang's Motion for Leave to File Second Amended Complaint should be denied. Yang has filed a bevy of lawsuits in multiple courts over the same underlying issue: his recent expulsion from the University of Minnesota.[1] In this Court, Yang has already once amended his complaint, and Defendants' motion to dismiss the amended complaint is fully briefed and pending. Yang now seeks leave to file a second amended complaint. The proposed second amended complaint fails to remedy any of the deficiencies in the amended complaint and adds a new claim which should likewise be dismissed. For these reasons, it is entirely futile. Moreover, Yang's approach to

---

[1] *See Haishan Yang v. Hannah Neprash*, Case No. 27-cv-24-19633 (Fourth Judicial District) (filed December 26, 2024); *Haishan Yang v. Hannah Neprash et al.*, Case No. 25-cv-00089 (D. Minn.) (filed January 8, 2025); *Matter of the University of Minnesota (Respondent) v. Haishan Yang (Relator)*, No. A25-0342 (Minn. Ct. App.) (filed March 3, 2025); *Haishan Yang v. Regents of the Univ. of Minn.*, Case No. 27-cv-25-5506 (Fourth Judicial District) (filed March 31, 2025).

challenging his expulsion—namely, to file multiple lawsuits in multiple venues despite a petition of certiorari to the Minnesota Court of Appeals being the exclusive remedy—is a waste of judicial resources and is in bad faith. This Court should deny Yang's request to file a second amended complaint.

## BACKGROUND

Haishan Yang was a third-year Ph.D. student in the Division of Health Policy and Management in the School of Public Health at the University. (Am. Compl. (Doc. 10) ¶ 7.) In August 2024, he took the written preliminary examination that is required of all students to advance to the next stage of the program. (*Id.*) The instructions for the written preliminary exam expressly stated that students "may not use any sort of Artificial Intelligence tools, such as ChatGPT, in any part of this exam." (Am. Compl. Ex 1 (Doc. 10-1) at 1.) A committee of four faculty members ("Grading Committee"), including Professor Neprash, reviewed Yang's written preliminary exam and concluded that Yang used artificial intelligence—specifically, a large language model like ChatGPT—in preparing his answers. (Am. Compl. (Doc. 10) ¶¶ 8–10.)

The Grading Committee referred the matter to the University's Office for Community Standards, which adjudicates suspected violations of Board of Regents Policy: *Student Conduct Code*, and the Grading Committee recommended that Yang be expelled for scholastic dishonesty. (Am. Compl. (Doc. 10) ¶ 10.) A five-member panel of the Campus Committee on Student Behavior conducted a formal hearing into the allegations against Yang on November 14, 2024. (Am. Compl. Ex. 7 (Doc. 10-7) at 3.) At the hearing, Yang was represented by an advocate from the University's Student

Advocate Services, through whom Yang was able to question witnesses, present evidence, and respond to written statements that were used as evidence against him. (*Id.*; Am. Compl. ¶ 18.)

On November 26, 2024, the Campus Committee on Student Behavior informed Yang of the hearing panel's unanimous finding that he was responsible for violating the scholastic dishonesty provision of the *Student Conduct Code*. (Am. Compl. Ex. 7 (Doc. 10-7) at 3.) The Committee articulated a number of reasons for finding that Yang violated the *Student Conduct Code*. (*Id.*). Yang timely filed an appeal to the University's Vice Provost, Scott Lanyon, who served as the University's appellate officer. (*Id.* at 2.) On January 7, 2025, Vice Provost Lanyon issued his decision upholding the Campus Committee on Student Behavior's finding of responsibility and Yang's resulting expulsion from the University. (Am. Compl. Ex. 7 (Doc. 10-7) at 6-7.)

Yang sued the University the next day. (Compl. (Doc. 1).) Yang moved for preliminary injunctive relief, which was denied. (Doc. 4; Doc. 8.) On January 27, 2025, Yang amended his complaint to drop the University as a defendant and to add Professor Neprash, Sharon Dzik (Director of the Office for Community Standards), Professor JaneAnne Murray (Chair of the hearing panel), and Vice Provost Lanyon as defendants ("University Officials"), and in his amended complaint he asserts a single claim for violation of his right to due process pursuant to 42 U.S.C. § 1983. (Am. Compl. (Doc. 10).) Yang also moved for preliminary injunctive relief a second time, which was again denied. (Doc. 16; Doc. 17; Doc. 25.)

On March 18, 2025, the University Officials moved to dismiss the amended complaint on at least three grounds: it is barred by the Eleventh Amendment to the extent he seeks money damages; he has failed to exhaust his administrative remedies; and he has failed to state a claim upon which relief can be granted, as the allegations in the amended complaint make clear he was provided with due process in the expulsion process. (Doc. 29.) This motion to dismiss is fully briefed and pending as of April 21, 2025. (Doc. 28; Doc. 29; Doc. 42; Doc. 43; Doc. 44.)

Yang now seeks leave to file a second amended complaint. In his proposed second amended complaint, Yang repleads his due process claim as *both* a procedural and substantive due process claim, and he adds a second claim for a violation of his right to equal protection pursuant to 42 U.S.C. § 1983. (Doc. 45-1.) Yang also seeks to add Professors Elizabeth Wattenberg, Ezra Golberstein, Peter Huckfeldt, and Caitlin Carroll as defendants.[2] (*Id.*) The proposed second amended complaint contains additional allegations of fact, none of which remedy the deficiencies in the amended complaint.

## ARGUMENT

Yang may only file his proposed second amended complaint with leave of the Court. *See* Fed. R. Civ. P. 15(a)(2). While such leave should be "freely given," this principle is only true in the absence of factors "such as undue delay, bad faith or dilatory

---

[2] Despite stating in his Motion for Leave to File Second Amended Complaint that the proposed amendment "adds new defendants . . . including the University of Minnesota," the University is not identified as a defendant anywhere in the proposed second amended complaint. (Doc. 45-1.) Notably, the University was a defendant in the original complaint, and Yang then removed the University as a defendant in the (operative) amended complaint.

motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Baptist Health v. Smith*, 477 F.3d 540, 544 (8th Cir. 2007). Here, the *Foman* factors do not support granting Yang leave to amend for a second time. Yang's motion seeking such leave evidences futility, failure to cure deficiencies, and bad faith. As such, Yang should not be granted leave to amend.

    **1.    Yang's Proposed Second Amended Complaint is Futile and Fails to Remedy the Deficiencies in His Amended Complaint.**

"[F]utility constitutes a valid reason for denial of a motion to amend." *U.S. ex rel. Raynor v. Nat'l Rural Utilities Co-op. Fin. Corp.,* 690 F.3d 951, 958 (8th Cir. 2012) (affirming denial of leave to amend). The standard for futility when considering leave to amend is the same as the standard for legal sufficiency under Rule 12(b)(6). *ecoNugenics, Inc. v. Bioenergy Life Sci., Inc.*, 355 F. Supp. 3d 785, 793 (D. Minn. 2019). The proposed second amended complaint is futile because (a) the proposed second amended complaint does not state a claim for a violation of due process or equal protection, (b) the University Officials are immune from suit for money damages in their official capacities and entitled to qualified immunity in their individual capacities, and (c) Yang failed to exhaust his administrative remedies, as required for his procedural due process claim. These were all grounds to dismiss the operative amended complaint, and the proposed amendments failure to cure these deficiencies.

   a. Yang fails to state any cognizable claims.

In his proposed second amended complaint, Yang attempts to set forth claims for a violation of procedural due process (Count I), a violation of substantive due process (Count I), and a violation of equal protection (Count II). Yang's allegations, even as amended, fail to state any actionable claim, and as such the proposed second amended complaint is futile.

   *i. Yang fails to state a procedural due process claim.*

In their briefing on the motion to dismiss the operative amended complaint, the University Officials set forth at length the reasons why Yang had failed to state a cognizable claim. (Doc. 29 at 15-17; Doc. 44 at 2-8.) Critically, the Fourteenth Amendment does not provide for a "constitutional right to an education," and "the Due Process Clause does not protect against expulsions" from public universities. *Goss v. Lopez*, 419 U.S. 565, 572 (1975). Academic dismissals—like the one at issue here, where Yang was dismissed for scholastic dishonesty—require less process than disciplinary dismissals. *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 90 (1978). Significant deference is given to the "judgments of educators," especially as a student "advances through the varying regimes of the education system, and the instruction becomes more individualized and more specialized." *Id.* Where a disciplinary dismissal requires notice and an opportunity to be heard, an academic dismissal requires notice and a "careful and deliberate" standard. *Monroe v. Ark. State Univ.*, 495 F.3d 591, 595 (8th Cir. 2007).

Yang's allegations demonstrate that he received sufficient process to satisfy either standard. (Doc. 29 at 16.) He had notice of the allegations against him. (Am. Compl. Ex. 7 (Doc. 10-7).) He was given a full hearing, where he was represented by an advocate, had the opportunity to cross-examine all witnesses against him, and presented several exhibits. (*Id.*) And he appealed the expulsion decision to the University's Vice Provost (*id.*) and is currently further challenging it by way of writ of certiorari to the Minnesota Court of Appeals. These allegations all demonstrate there was no procedural due process violation.

In his proposed second amended complaint, Yang now alleges in conclusory fashion that he was deprived of procedural due process in certain additional ways, alleging that Director Dzik acted in "overlapping role[s]" in the process; Professor Wattenberg "pressured the hearing panel to pursue an outcome of expulsion"; a previously dismissed allegation was improperly used as evidence; there is an "undisclosed relationship" between Professor Neprash's spouse and Professor Murray; Yang was only permitted to cross-examine Professors Neprash and Golberstein but not Professors Huckfeldt, Carrol, Watternberg, or Mason; one piece of evidence was only provided during (rather than before) the hearing; Director Dzik interrupted Yang's advocate during cross-examination; and Yang's advocate, Director Dzik, and Professor Murray had an "unrecorded three-minute breakout session." (Dkt. 45-1 at 11-12 (¶¶ 46-53).) These allegations, however, are either entirely conclusory and unsupported by any allegation of fact, or otherwise fail to demonstrate Yang was deprived of any process he was owed.

For example, Yang fails to identify any grounds to infer that interruptions or break-out sessions were impermissible such that it deprived him of due process. And his allegations of "bias" are entirely conclusory—he simply takes issue with the fact that Professor Neprash's spouse (like Professor Neprash) is on the University's faculty, and Professor Murray (also on the University's faculty) had a "professional relationship" with him. (Dkt. 45-1 at 8 (¶¶ 29-30).) These allegations simply do not give rise to a procedural due process violation.

With respect to Yang's allegations of a failure to permit cross-examination, he had the opportunity to cross-examine the two faculty members who testified at the hearing, and he was able to himself respond to the written statements submitted by others. (*Id.* at 5-6 (¶ 20)). Moreover, the due process clause does not categorically afford a student the right to cross-examination. *See Doe v. Univ. of Arkansas - Fayetteville*, 974 F.3d 858, 868 (8th Cir. 2020) (affirming dismissal of due process claim premised on failure to permit cross-examination). As in *Doe*, here Yang has provided only "conclusory allegations" of flaws in the proceeding—he does not allege, for example, that there was some information relied upon by the panel that was provided only by the two absent members of the Grading Committee. As such, he has not adequately pleaded that the alleged failure to permit cross-examination of all possible witnesses was a due process violation. None of Yang's conclusory allegations establish a due process violation; to the contrary, the allegations of fact demonstrate that Yang was provided with more-than-adequate process prior to his expulsion.

Moreover, and independently, Yang has a sufficient post-deprivation remedy: the certiorari review process through the Court of Appeals. *See* Section 1(c), *infra*. Due process is not violated where there is an adequate post-deprivation remedy available. *See Mickelson v. Cnty. of Ramsey*, 823 F.3d 918, 928–29 (8th Cir. 2016) (holding that "an adequate post-deprivation process may satisfy the Fourteenth Amendment . . . even when the deprivation occurs pursuant to established state policy"). The certiorari review process is not a "lengthy and speculative" remedy, but rather a constitutionally sufficient administrative process. *See id.* As such, even had Yang alleged insufficient pre-deprivation process, his claim nonetheless fails due to the post-deprivation certiorari review process available to him. Nothing in Yang's proposed second amended complaint cures this.

For these reasons, Yang fails to state a claim for a violation of procedural due process in either his operative amended complaint or his proposed second amended complaint.

> ii. *Yang fails to state a substantive due process claim.*

In his proposed second amended complaint, Yang purports to state a claim for a substantive due process violation. The Eighth Circuit, however, has not recognized a substantive due process cause of action for a student who has been subject to academic dismissal. *Schuler v. Univ. of Minn.*, 788 F.2d 510, 515 (8th Cir. 1986) (characterizing "whether a university student subject to academic dismissal" can assert a substantive due process claim as an open question); *Richmond v. Fowlkes*, 228 F.3d 854, 859 (8th Cir. 2000) ("Whether a student who is subject to academic dismissal may maintain a cause of

9

action for the violation of his right to substantive due process remains an open question."); *Keefe v. Adams*, 840 F.3d 523, 533 (8th Cir. 2016) ("Following the Supreme Court's lead, we have repeatedly assumed without deciding that an academic dismissal may be challenged on substantive due process grounds but upheld the summary rejection of those claims, applying the Supreme Court's deferential standard.").

Even if a substantive due process claim is actionable in the circumstance of an academic dismissal, Yang fails to state such a claim. To state a substantive due process claim, the plaintiff must "plausibly allege factual allegations" that support an inference that the complained-of government action was "truly irrational," was "something more than arbitrary, capricious, or in violation of state law," was "conscience shocking in a constitutional sense," and, in "the specific context of academic dismissal," that "there was no rational basis for the university's decision, or [] the decision was motivated by bad faith or ill will unrelated to academic performance." *Mulla v. Univ. of Minnesota*, No. 20-CV-931 (SRN/LIB), 2021 WL 603774, at *19 (D. Minn. Feb. 16, 2021), *aff'd*, No. 21-1693, 2022 WL 570099 (8th Cir. Feb. 25, 2022); *see also Keefe*, 840 F.3d at 533. Yang's cursory allegations fail to meet this high threshold.

Yang alleges in conclusory fashion that "Defendants failed to exercise professional judgement, but acted on bad faith." (Doc. 45-1 at 18 (¶ 59).) In support of this allegation, Yang asserts without support that it was improper to expel him for "breach of trust," that the University "substantially deviate[d] from recognized academic standards" by using AI, that Professor Neprash "maliciously altered the evidence," and

10

that in a "prior incident" Professors Golberstein and Neprash had "tried to expel Plaintiff." (*Id.* at 12-13 (¶¶ 55-58).)

The pleadings themselves, however, dispute the accuracy of these allegations. For example, Yang only pleads that Professor Neprash used ChatGPT to compare a ChatGPT-generated answer to Yang's answer. (Doc. 45-1 at 4 (¶¶ 14-15).) This allegation does not support a conclusion of improper use of AI by the University, much less a substantial deviation from "recognized academic standards." Moreover, Yang pleads no allegations of fact to support his claim that Professor Neprash altered any evidence, much less that she did so "maliciously." In fact, Yang's appeal simply asserted that in eight instances, Professor Neprash changed the font's bolding or italicization. *See, e.g., Yang v. Regents of the Univ. of Minn.*, Case No. 27-cv-25-5506 (Fourth Judicial District), Compl. Ex. 2 at 6. Notably, Vice Provost Lanyon did not find credible the assertion that Professor Neprash intentionally altered the ChatGPT output to mimic Yang's answer. (Am. Compl. Ex. 7 (Doc. 10-7).) And the Campus Committee on Student Behavior did not cite "trust" as a basis for Yang's expulsion (*Id.* at 3). Rather, the Panel "unanimously agreed . . . that more likely than not, [Yang] had used some kind of artificial intelligence (AI) software to develop answers for the exam." (*Id.* at 3.) Finally, the proposed amended complaint contains *no* allegations of any prior incident where Professors Neprash and Golberstein tried to expel Yang.

Even if these allegations *were* sufficiently pled and thus required an assumption of truth, they would not support a substantive due process claim. A substantive due process claim only lies where "there was no rational basis for the university's decision" or it was

11

"motivated by bad faith . . . unrelated to academic performance." *Mulla*, 2021 WL 603774, at *19. Here, the alleged procedural irregularities do not negate that the decision was supported by a rational basis and was related to academic performance.

For these reasons, the proposed second amended complaint is futile with respect to any substantive due process claim.

### iii. *Yang fails to state an equal protection claim.*

Yang's new claim, for an alleged violation of equal protection, is similarly futile. Yang alleges that he was "intentionally treated differently from similarly situated students, without rational basis." (Doc. 45-1 at 15 (¶ 68).) He does not allege, however, that any differential treatment was connected to his race, national origin, or any other protected characteristic. To state an equal-protection claim not premised on a suspect classification, Yang must allege that he and other students were similarly situated in all respects, and that the University's differential treatment of Yang and the other students did not serve a rational purpose. Yang's proposed second amended complaint does not meet this high bar.

A critical element of a class-of-one equal protection claim is that the comparator students are similarly situated. *See Carter v. Arkansas*, 392 F.3d 965, 969 (8th Cir. 2004); *Semler v. Ludeman,* No. CIV 09-0732 ADMSRN, 2010 WL 145275, at *28 (D. Minn. Jan. 8, 2010); *see also Plaintiff A v. Park Hill Sch. Dist.,* 97 F.4th 586, 592 (8th Cir. 2024). Here, Plaintiff alleges that four other students "found responsible for plagiarism" or involved in other "instances of academic misconduct" were not expelled. (Doc. 45-1 at 14-15 (¶¶ 65-66).) He fails, however, to plead that any other student who used AI on an

examination was treated differently from Plaintiff, much less treated more favorably than him without any rational basis. This alone dooms his claim.

Moreover, Yang's allegations about the use of AI-detection systems do not support his claim. He alleges he was "one of the only students subjected to heightened scrutiny by AI systems," that "there is no indication" that "AI-based assessments" are applied uniformly, and that the use of AI tools was discriminatory because of "biases . . . toward non-native English speakers." (Doc. 45-1 at 13-14 (¶¶ 61-63).) These allegations, however, fail to support a claim that Yang was treated disparately for no rational reason. To be clear, nowhere does Yang explicitly allege that he is not a native English speaker. Even if he had, however, "language and national origin are not interchangeable." *Mumid v. Abraham Lincoln High Sch.,* 618 F.3d 789, 795 (8th Cir. 2010). The Eighth Circuit held in *Mumid* that "[a] policy that treats students with limited English proficiency differently than other students in the district does not facially discriminate based on national origin." *Id.*; *see also Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.,* 600 U.S. 181, 198 n.2 (2023) (the same standards apply to equal protection and Title VI claims). Yang's cursory allegation of language-based bias is likewise insufficient to state a claim for a violation of equal protection.

For these reasons, Yang's proposed equal protection claim would be subject to dismissal if filed, and the proposed second amended complaint is therefore futile.

      b.  <u>Defendants are immune from suit for money damages</u>.

In his operative amended complaint, Yang seeks compensatory and punitive damages in the amount of $4,510,000. (Am. Compl. (Doc. 10) ¶ 36.) The University

Officials moved to dismiss, explaining (in relevant part) that the Eleventh Amendment immunizes the University Officials from suit in federal court for money damages, and that with respect to the individual capacity claims, the University Officials are entitled to qualified immunity. (Doc. 29 at 12-13 and 17-18.) Despite this well-established precedent, in his proposed second amended complaint, Yang now seeks $5,510,000 in damages. (Doc. 45-1 at 16 (¶ 71).)

As a preliminary matter, nothing in the proposed second amended complaint overcomes Eleventh Amendment immunity. As an arm of the state, the University and its officials are immune from suit in federal court for money damages, absent waiver. *See Humenansky v. Regents of Univ. of Minn.*, 152 F.3d 822, 824 (8th Cir. 1998); *Raymond v. Bd. of Regents of Univ. of Minn.*, 140 F. Supp. 3d 807, 813 (D. Minn. 2015); *Regents of Univ. of Minn. v. Raygor*, 620 N.W.2d 680, 681, 683 (Minn. 2001). As previously identified (Doc. 29 at 13), the University has not waived its sovereign immunity with respect to due process claims. *Mulla v. Univ. of Minn.*, Case No. 20-cv-931 (SRN/LIB), 2021 WL 603774, at *13 (D. Minn. Feb. 16, 2021). The same is true with respect to equal protection claims. *Portz v. St. Cloud State Univ.,* 297 F. Supp. 3d 929, 937-940 (D. Minn. 2018). As such, Yang's due process and equal protection claims as stated in the proposed second amended complaint (as well as his due process claim as stated in his amended complaint), are barred by Eleventh Amendment immunity to the extent he seeks money damages from the University Officials in their official capacities (or from the University directly).

Moreover, qualified immunity bars money damages from the University Officials in their individual capacity. This is true for both the amended complaint and the proposed second amended complaint. As previously explained (Doc. 29 at 17), qualified immunity shields government officials acting in their individual capacity unless their "conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *New v. Denver*, 787 F.3d 895, 899 (8th Cir. 2015) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A right is clearly established where "controlling authority or a robust consensus of cases of persuasive authority" place the question of whether the right existed at the time of the injury "beyond debate." *Dimock v. City of Brooklyn Ctr.*, 124 F.4th 544, 553 (8th Cir. 2024) (internal quotations omitted). Here, not only does the proposed second amended complaint fail to state a claim for a constitutional violation (*see* Section 1(a), *supra*), even if it had, the alleged constitutional right was not clearly established.

In their motion to dismiss, the University Officials explained that even if the Court concludes that Yang has sufficiently pleaded that his due process rights were violated, the University Officials are entitled to qualified immunity because the particular right at issue was not clearly established at the time of the alleged violation. (Doc. 29 at 18.) In briefing this issue, Yang failed to identify any case that establishes a deprivation of due process following an expulsion for scholastic dishonesty following an investigation, a hearing before a panel, and an independent appeal. (Doc. 44 at 8.) In his proposed second amended complaint, Yang fails to plead any facts that change the "clearly established" analysis with respect to due process.

Yang will likewise be unable to show that any case establishes a violation of equal protection on such facts. The University Officials are aware of no legal authority holding that the use of AI-detection systems is a violation of equal protection, or that it violates equal protection to expel a student for scholastic dishonesty for the use of AI in an examination, following a hearing. As such, Yang's claims are barred by qualified immunity to the extent he seeks money damages from the University Officials in their individual capacities.

For these reasons, the proposed second amended complaint is futile to the extent it seeks any money damages (and, in fact, seeks increased money damages).

    c.  <u>Yang failed to exhaust his administrative remedies.</u>

Finally, the proposed second amended complaint is futile with respect to the claim for a violation of procedural due process because Yang has failed to exhaust his administrative remedies. To the extent that Yang seeks prospective injunctive relief from the University Official, he can only do so through a writ of certiorari to the Minnesota Court of Appeals. *Shaw v. Bd. of Regents of Univ. of Minn.*, 594 N.W.2d 187, 191 (Minn. Ct. App. 1999); *see also Zweber v. Credit River Twp.*, 882 N.W.2d 605, 610 (Minn. 2016) (holding that when an action challenges a quasi-judicial decision, the "exclusive method of review is by certiorari").

As previously explained (Doc. 29 at 14), although plaintiffs are generally not required to exhaust state remedies as a prerequisite to bringing an action under Section 1983, the Eighth Circuit has recognized an exception to this rule for procedural due process claims. *Keating v. Neb. Pub. Power Dist.*, 562 F.3d 923, 929 (8th Cir. 2009);

*Wax 'n Works v. City of St. Paul*, 213 F.3d 1016, 1019 (8th Cir. 2000). "[A] litigant asserting a deprivation of procedural due process must exhaust remedies before such allegation states a claim under § 1983." *Wax 'n Works*, 213 F.3d at 1019 (internal citations omitted). Yang's matter before the Court of Appeals is pending, and thus he has not exhausted his administrative remedies. *See Matter of the University of Minnesota (Respondent) v. Haishan Yang (Relator)*, No. A25-0342 (Minn. Ct. App.). He should be denied leave to amend on this ground as well.

For each of these reasons, Yang's proposed second amended complaint is entirely futile.

2. **Yang's Proposed Second Amended Complaint—And His Entire Litigation Strategy—is in Bad Faith.**

"[B]ad faith" is "one of the recognized bases for denying a motion to amend under Rule 15(a)." *ecoNugenics,* 355 F. Supp. 3d at 791. One manner of "bad faith" is vexatious litigation. *See Johnson v. U.S. Bank, N.A.*, No. CIV.04-4945JNE/SRN, 2005 WL 1421461, at *3 n.2 (D. Minn. June 17, 2005); *see also Engel v. Corizon,* No. 4:20-CV-1828-AGF, 2021 WL 949635, at *6 (E.D. Mo. Mar. 12, 2021). Here, Yang has engaged in a vexatious course of conduct by filing multiple lawsuits, some with multiple amended complaints and some with multiple requests for preliminary injunctive relief, over the same underlying issue (his expulsion), despite a writ of certiorari to the Minnesota Court of Appeals being the *only method available* for judicial review of the University's expulsion decision. *See Wax 'n Works*, 213 F.3d at 1019; *Shaw*, 594 N.W.2d at 191.

17

Significantly, Yang has sought to challenge his expulsion in multiple venues, peppering the University with complaints and motions for injunctive relief. On December 26, 2024, Yang filed suit against Professor Neprash in state court. *See Haishan Yang v. Hannah Neprash*, Case No. 27-cv-24-19633 (Fourth Judicial District). On January 8, 2025, Yang filed the instant federal lawsuit against the University of Minnesota, later amending the suit to be brought against Professor Neprash, Professor Murray, Director Dzik, and Vice Provost Lanyon. *Haishan Yang v. Hannah Neprash et al.*, Case No. 25-cv-00089 (D. Minn.). He *twice* filed for (and was denied) injunctive relief in this Court. (*Id.* at Doc. Doc. 16; Doc. 17; Doc. 25.) Then on March 3, 2025, Yang filed a petition for writ of certiorari to the Minnesota Court of Appeals. *Matter of the University of Minnesota (Respondent) v. Haishan Yang (Relator)*, No. A25-0342 (Minn. Ct. App.). In the Minnesota Court of Appeals, he requested a stay of his expulsion, which was denied. (*Id.*) And then on March 31, 2025, Yang filed a second lawsuit in state district court, this time against the University. *Haishan Yang v. Regents of the Univ. of Minn.*, Case No. 27-cv-25-5506 (Fourth Judicial District). Each of these suits contains a variety of overlapping, and often identical, claims for violations of the U.S. Constitution, the Minnesota Constitution, and various state laws.

The latest request for leave to file a second amended complaint—which would be Yang's *third* bite at the apple in this Court—is just the latest in a course of vexatious litigation by Yang. This is especially improper because Minnesota statute dictates that the only proper procedure Yang to seek the relief he really wants is a certiorari proceeding. And he's been told this in conjunction with every successive lawsuit he files, yet he

persists in this vexatious pattern nonetheless.  For this additional reason, Yang should be denied leave to file his proposed second amended complaint.

## CONCLUSION

For the foregoing reasons, the University Officials respectfully ask the Court to deny Yang's motion for leave to file a second amended complaint.

Dated: May 12, 2025

DOUGLAS R. PETERSON
General Counsel
University of Minnesota

/s/ *Carrie Ryan Gallia*
Carrie Ryan Gallia (#0390479)
Senior Associate General Counsel
Office of the General Counsel
University of Minnesota
200 Oak Street Southeast, Suite 360
Minneapolis, Minnesota 55455-2006
(612) 624-4100
ryang001@umn.edu

ATTORNEYS FOR DEFENDANTS
HANNAH NEPRASH, SHARON DZIK,
JANEANNE MURRAY, AND SCOTT
LANYON