UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Haishan Yang,

    Plaintiff,

v.

Hannah Neprash, *in her individual and official capacity as Associate Professor at the University of Minnesota ("the University")*; Scott Lanyon, *in his individual and official capacity as Vice Provost at the University*; JaneAnne Murray, *in her individual and official capacity as Chair of the Campus Committee on Student Behavior Hearing (CCSB) at the University*; Sharon Dzik, *in her individual and official capacity as University Representative during the CCSB hearing at the University*,

    Defendants.

File No. 25-CV-00089 (JMB/SGE)

**ORDER**

---

Haishan Yang, St. Paul, MN, self-represented.

Lisa L. Beane, University of Minnesota, Minneapolis, MN, for Defendants Hannah Neprash, Scott Lanyon, JaneAnne Murray, and Sharon Dzik.

---

    This matter is before the Court on Defendants Hannah Neprash, Scott Lanyon JaneAnne Murray, and Sharon Dzik's (together, Defendants) motion to dismiss Plaintiff Haishan Yang's First Amended Complaint (FAC) (Doc. No. 28) and Yang's motion for leave to file a proposed Second Amended Complaint (SAC) (Doc. No. 45). Yang challenges the disciplinary action taken by Defendants against him for suspected violations of codes of conduct prohibiting scholastic dishonesty. For the reasons explained below,

1

the Court grants Defendants' motion, denies Yang's motion, and dismisses this action.

## BACKGROUND

### A.     Grading Committee Decision and Referral

Yang was an international Ph.D. student enrolled in the Health Services Research, Policy & Administration program at the University of Minnesota (University). (Doc. No. 10 [hereinafter, FAC] ¶ 3.) Defendants are officers of the University. (*See id.* ¶ 4.) Neprash is an Associate Professor, Lanyon is Vice Provost, Murray is Chair of the Campus Committee on Student Behavior (CCSB),[1] and Dzik is a University representative. (*Id.*)

In August 2024, Yang took an 8-hour exam to advance to the next stage of his doctoral program. (*Id.* ¶ 7.) The exam instructions expressly prohibited the use of "any sort of Artificial [I]ntelligence [AI] tools, such as ChatGPT, in any part of this exam." (Doc. No. 10-1 at 1.) A grading committee composed of faculty members, including Neprash (FAC ¶ 7), reviewed Yang's exam and "had significant concerns" that he had used AI tools to develop his exam answers (*id.* ¶ 10; Doc. No. 10-4 at 1.) Each of the grading committee members thought that Yang's exam "did not seem to be written in [his] voice." (FAC ¶ 10; Doc. No. 10-4 at 1.) They also noted "instances where [his] answers seemed to not be directly relevant to the question, or involved concepts that were not covered in class or the readings." (Doc. No. 10-4 at 1.)

To resolve these concerns, the grading committee ran the exam questions through

---

[1] The CCSB "is the central body for the Twin Cities campus in matters involving violations of the Student Conduct Code and is composed of faculty, academic professional, and student members." (Doc. No. 10-7 at 3.)

ChatGPT and compared the output to Yang's answers. (*Id.*) Upon doing so, the grading committee identified "several specific instances" where the "language and/or structure" of Yang's answers "match[ed] the ChatGPT output closely." (*Id.*) For instance, they "found it striking" that the examples Yang had offered in response to one exam question "were the exact three examples that ChatGPT produced" even though there were other possible examples that he could have offered. (*Id.* at 2.) Additionally, they found it "very unusual in the context of th[e] exam" that Yang's answers and the ChatGPT output included nonstandard answers to a certain question, which were not covered in the doctoral program's classes or readings. (*Id.* at 4.)

      The grading committee also compared Yang's writing on the exam to prior samples of his writing. (*Id.* at 4–6.) For example, they compared Yang's writing on the exam to a "known example of writing in [Yang]'s voice" and observed "many dissimilarities between" them. (*Id.* at 6.) In addition, they also reviewed practice answers to a previous version of the exam that Yang submitted for feedback in preparation for the exam. (*Id.* at 4.) Upon reviewing those practice answers, one committee member noted "similarities" between Yang's practice answers and his answers from the exam. (*Id.*) Consequently, that member ran the practice exam questions through ChatGPT and compared the output to Yang's practice answers. (*Id.* at 4–5.) The grading committee found "strong evidence" that Yang had used ChatGPT to formulate his practice answers. (*Id.* at 5.)

      Based on these findings, the grading committee agreed that there was a preponderance of evidence that Yang had used a large language model like ChatGPT to formulate his exam answers. (*Id.*) Consequently, they referred the matter to the

3

University's Office for Community Standards (OCS) for a determination whether he had violated the University's Student Conduct Code's scholastic dishonesty provision. (*See* FAC ¶ 10; Doc. No. 10-7 at 2.)[2]

A few days later, after OCS received the grading committee's report, OCS advised Yang of the report and requested to meet with him. (Doc. No. 10-7 at 2.) Yang and an academic advisor met with OCS and, later, Yang submitted a thirty-five-page response to the charges. (*Id.*) In November 2024, after considering Yang's response, OCS, in consultation with the involved faculty, informed Yang by letter that it had found him responsible for violating the Student Conduct Code's scholastic dishonesty provision. (*Id.*) OCS offered Yang an informal resolution of expulsion, and Yang exercised his right to request a formal hearing before the CCSB. (*Id.*)

### B.     CCSB Hearing

In mid-November 2024, a five-member panel of the CCSB held a formal hearing to consider the allegations against Yang. (*Id.* at 3.) An advocate represented Yang at the hearing. (*Id.*) Through the advocate, Yang was able to question witnesses, present

---

[2] The Student Conduct Code bars the unauthorized use of online resources under the category of conduct referred to as scholastic dishonesty. *See Board of Regents Policy: Student Conduct Code*, 4 (June 10, 2022), https://regents.umn.edu/sites/regents.umn.edu/files/2024-05/policy_student_conduct_code.pdf. Under the Student Conduct Code, any student alleged to have violated the code has the opportunity to receive a fair hearing. *Id.* at 8. A finding of a violation must be based on a preponderance of the evidence. *Id.* Students are also entitled to "due process and procedural fairness protections, including the prompt notification of charges, the opportunity to respond, the right to an advocate of choice, and the right to the resolution of a case within a reasonable time period." *Id.* at 2.

evidence, and respond to written statements that were used as evidence against him. (*Id.*)

More specifically, Yang's advocate questioned Neprash about the ChatGPT output generated after the grading committee suspected that Yang had used AI to complete his exam. (FAC ¶ 18; Doc. No. 10-6 at 124–32.) The advocate also generated responses from the free version of ChatGPT during the hearing and asked Neprash about differences between that output and the ChatGPT output that the grading committee had generated. (*Id.* at 130–32.) During this line of questioning, Dzik, who was presenting information on the University's behalf, asked the advocate and Murray, the CCSB chair, to have a brief discussion. (*Id.* at 134.) After this discussion, Murray explained that the line of questioning would not continue because the CCSB "do[es]n't create new evidence." (*Id.*; *see also* FAC ¶¶ 19–20.) The advocate also questioned another member of the grading committee, and Yang testified and offered evidence. (Doc. No. 10-7 at 3.)

In late November, the CCSB informed Yang in writing of the hearing panel's unanimous finding that he was responsible for violating the Student Conduct Code's scholastic dishonesty provision. (*Id.*) The committee articulated several reasons for this finding, including the University's "compelling" presentation, the testifying professors' ability to identify AI-generated papers, Yang's use of documents in the exam "that were demonstrated to be irrelevant to the exam question," the lack of citations in Yang's exam answers, Yang's "pattern of excuses about exam errors," and inconsistencies in Yang's testimony. (*Id.*)

### C. Yang's Appeal of the CCSB's Decision

Yang timely appealed the CCSB's decision to Lanyon. (*Id.* at 2.) Yang raised four

grounds for the appeal: (1) new, previously unavailable evidence sufficient to affect the outcome of the hearing; (2) significant procedural error sufficient to affect the outcome; (3) lack of substantial information; and (4) outcome grossly disproportionate to the offense. (*Id.* at 3–6.) On January 7, 2025, Lanyon issued a decision that upheld the CCSB's finding of responsibility and Yang's resulting expulsion. (*Id.* at 1.)

First, Yang argued that the ChatGPT output generated by another grading committee member and the original ChatGPT output generated by Neprash (as opposed to the report submitted to the OCS) were submitted late in the CCSB hearing. (*Id.* at 4.) Lanyon rejected this ground for appeal, finding that even though those outputs were submitted late in the hearing, the CCSB panel still had access to and could consider that evidence in its deliberations. (*Id.* at 4–5.) Lanyon also reasoned that it was not clear that this information was previously unavailable, as Yang claimed, given that there was no record of Yang having requested that information before the hearing. (*Id.* at 4.) Lanyon also found that earlier submission of that evidence would not have changed the outcome of the hearing because "[t]he same markers of the use of AI (for example, the unusually long answer, structured writing style, non-standard content for the field, a writing style/voice that is dissimilar to other written assignments by the student) are present, regardless." (*Id.*) Lanyon also found that Yang's assertion that Neprash intentionally altered the ChatGPT output to mimic Yang's answers was not credible, noting that nothing in the record suggested Neprash had any motivation to act counter to Yang's interests and that Yang did not object to Neprash's inclusion on the grading committee. (*Id.*) Yang also submitted, as previously unavailable evidence, a "forensic analysis" of the alleged differences in the

6

ChatGPT output submitted to OCS and the original ChatGPT output generated by Neprash. (*Id.* at 4–5; Doc. No. 10-5; FAC ¶ 14.) Lanyon declined to add the information to the record because "it does not provide any information that was not before the panel during their deliberations." (Doc. No. 10-7 at 4–5.)

Second, Yang argued that a procedural error had occurred during the hearing because Neprash should not have been permitted to submit a link to her original ChatGPT output during the hearing. (*Id.* at 5.) Lanyon found no error here because Neprash submitted the link at the request of Yang's advocate. (*Id.*) Yang also asserted lack of impartiality by Murray, noting that Murray "interrupted" Yang and his advocate more than seven times but only interrupted Dzik and the University witnesses once. (*Id.*) Lanyon wrote that this kind of scorekeeping is not sufficient to establish bias and that the record shows that Murray's interruptions concerned moving the hearing along and enforcing agreed-upon timeframes. (*Id.*) Finally, Lanyon was not convinced by Yang's assertion that he did not have enough time to present his arguments because Yang and the University agreed on the amount of time each party would have to present their case at a pre-hearing conference. (*Id.*) In sum, Lanyon concluded that Yang's arguments of procedural error lacked merit.

Third, Yang argued that CCSB's decision was based on a lack of substantial information. (*Id.* at 5–6.) Lanyon rejected this ground for appeal as a request "to substitute [his] judgment for that of the Panel's." (*Id.* at 6.) Lanyon concluded that Yang had a full and fair opportunity to present his position to the CCSB, as he had also raised these arguments at the hearing.

Fourth, Yang argued that the reason provided for the expulsion—that his conduct had destroyed trust between him and the University—was not an appropriate consideration. (*Id.* at 6–7.) Lanyon rejected Yang's argument, pointing out that the exam is an important step in the process of earning a Ph.D. and that Yang's conduct violated the trust placed in students to complete an un-proctored exam using only their work. (*Id.*) He also referred to a no-tolerance policy for such conduct and characterized it as "serious scholastic dishonesty" under the Student Conduct Code. (*Id.*)

After Lanyon issued this decision, the University terminated his Student and Exchange Visitor Information System (SEVIS) record, due to his expulsion, which caused Yang to lose his status as an international student and rendered him unable to legally remain in or return to the United States under that status. (FAC ¶¶ 3, 13, 25.)

### D. This Action

On January 8, 2025, Yang brought this action against the University. (Doc. No. 1.) At that time, he also moved for a preliminary injunction. (Doc. Nos. 3, 4.) The Court denied that motion on procedural grounds. (Doc. No. 8.) Later in January, Yang filed the FAC, which no longer named the University and added Neprash, Lanyon, Murray, and Dzik. (*See* FAC.) Shortly thereafter, Yang moved for a temporary restraining order (Doc. No. 14), which the Court denied (Doc. No. 22).

Yang brings this action under 42 U.S.C. § 1983 against these Defendants, acting in their official and individual capacities, for violating his due process rights under the

Fourteenth Amendment. (FAC ¶ 1.)[3] Yang seeks $4,510,000 in damages, as well as prospective injunctive relief, including reinstatement to his Ph.D. program, expungement of his disciplinary record, and an injunction to prevent further misconduct. (*Id.* ¶¶ 32–34, 36.) Yang alleges that his academic and professional development have been "severely hindered" because of this conduct. (*Id.* ¶ 30.) He has also lost his legal status in the United States and experienced financial, emotional, and reputational harm. (*Id.* ¶¶ 25, 26, 28, 29.)

## DISCUSSION

Defendants now move to dismiss the FAC. (Doc. No. 28.) Yang moves for leave to file the SAC. (Doc. No. 45 [hereinafter, SAC] ¶ 3.) Because the allegations in the FAC fail to state a section 1983 claim, the Court grants the motion to dismiss. Because the proposed amendments in the SAC also fail to state a section 1983 claim, the Court denies the motion to amend.

**I.     MOTION TO DISMISS**

Defendants move to dismiss the FAC for failure to state a claim, arguing that the allegations do not plausibly plead a substantive or procedural due process violation. (Doc. Nos. 28, 29.)[4] The Court agrees.

---

[3] Section 1983 creates a cause of action for deprivation of rights secured by the Constitution or federal laws. 42 U.S.C. § 1983; *Hamilton v. Schriro*, 74 F.3d 1545, 1549 (8th Cir. 1996).

[4] Defendants also raise a separate and independent challenge to the request for monetary damages in the FAC, arguing that such a remedy is prohibited when requested as part of a claim against state officers acting in their official capacities and qualified immunity protects state officers acting in their individual capacities. Defendants are correct. "[T]he Eleventh Amendment prohibits federal-court lawsuits seeking monetary damages from individual state officers in their official capacities because such lawsuits are essentially 'for the recovery of money from the state.'" *Raymond v. Bd. of Regents of Univ. of Minn.*, 140

As a threshold matter, the Court observes that when considering a motion to dismiss under Rule 12(b)(6), courts accept the facts alleged in the complaint as true and view those allegations in the light most favorable to the plaintiff. *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013) (citation omitted). However, courts need not accept as true wholly conclusory allegations or legal conclusions couched as factual allegations. *Id.* (citations omitted). In addition, courts ordinarily do not consider matters outside the

---

F. Supp. 3d 807, 813 (D. Minn. 2015) (quotation omitted). Because Congress has not abrogated the University's immunity with respect to his claims and the University has not waived its immunity, the Court dismisses the request for monetary relief against Defendants acting in their official capacities.

In addition, the doctrine of qualified immunity shields government officials acting in their individual capacities unless their "conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *New v. Denver*, 787 F.3d 895, 899 (8th Cir. 2015) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Ambrose v. Young*, 474 F.3d 1070, 1077 (8th Cir. 2007) (requiring dismissal unless the court concludes that "the official's conduct violated a constitutional right" and that "the right was clearly established at the time of the deprivation such that a reasonable official would understand his conduct was unlawful in the situation he confronted." (quotation omitted)). Plaintiffs bear the burden of showing that the right was clearly established and can do so by identifying "some existing precedent [that] place[s] the question beyond debate" or by showing that the conduct is "so obviously unconstitutional that no precedent is needed." *Estate of Walker v. Wallace*, 881 F.3d 1056, 1060–61 (8th Cir. 2018). Here, Yang identifies no binding legal authority that establishes, "beyond debate," that a student has a clear constitutional right to be free from academic dismissal. To the contrary, this remains an open question. *See, e.g.*, *Schuler v. Univ. of Minn.*, 788 F.2d 510, 515 (8th Cir. 1986) (observing that *Bd. of Curators, Univ. of Mo. v. Horowitz*, 435 U.S. 78, 91–92 (1978), "left open the question of whether a university student subject to academic dismissal may maintain a cause of action for the violation of his or her right to substantive due process"); *Mulla v. Univ. of Minn.*, No. 20-CV-931 (SRN/LIB), 2021 WL 603774, at *18 (D. Minn. Feb. 16, 2021), ("[N]o binding precedent expressly recognizes a constitutionally protected property interest in continuing one's education at a public university . . . ."), *aff'd*, No. 21-1693, 2022 WL 570099 (8th Cir. Feb. 25, 2022) (per curiam). Accordingly, qualified immunity bars any request for monetary damages against the Defendants in their individual capacities.

pleadings on a motion to dismiss. *See* Fed. R. Civ. P. 12(d). Courts may, however, "consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011) (quoting *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010)). To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### A.   Substantive Due Process Claims

As noted above, *supra* note 4, whether the Constitution protects a person's interest in continuing education at a public university is an open question. *See Schuler*, 788 F.2d at 515; *Mulla*, 2021 WL 603774, at *18. Even assuming the existence of such a right, however, the Court concludes that the FAC contains insufficient allegations to state any substantive due process claim.

To prevail on a substantive due process claim in the academic context, a plaintiff must "demonstrate arbitrary and capricious conduct on the part of university officials by showing that there was no rational basis for the university's decision or that dismissal was motivated by bad faith or ill will unrelated to academic performance." *Schuler*, 788 F.2d at 515 (citations omitted). Indeed, a plaintiff must establish that the "action complained of is truly irrational, that is something more than . . . arbitrary, capricious, or in violation of

state law." *See Mills*, 614 F.3d at 498 (quoting Ganley v. Minneapolis Park & Recreation Bd., 491 F.3d 743, 749 (8th Cir. 2007)). "Truly irrational conduct is conscience shocking," and substantive due process violations are "reserved for truly egregious and extraordinary cases." *Id.* (citation modified); *see also Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1985) (concluding that courts also defer to decisions of faculty, taking care to "show great respect for the faculty's professional judgment" and should not "override" this exercise of professional judgment unless it is such "a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment" (citation omitted)).

In this case, the FAC falls short of plausibly alleging facts that meet this high standard. The FAC contains no factual statements concerning the Defendants' motives, or that otherwise allege that Defendants substantially departed from some accepted academic norm, failed to exercise professional judgment, or acted in bad faith. These failures are significant in light of Lanyon's finding on appeal that the CCSB's decision was not "unreasonable" after consideration of the evidence as a whole. (Doc. No. 10-7 at 6.) Specifically, Lanyon found "there [was] nothing in the record to suggest any motivation for Dr. Neprash to act contrary to the interests of Dr. Yang" and if there had been reason to suspect bias, Yang could have challenged her inclusion on the panel that reviewed his exam, which he did not. (*Id.* at 4.) Absent such allegations, the FAC fails to plausibly allege the types of conscience-shocking conduct required under the law. To the extent that the FAC raises substantive due process claims, the Court dismisses those claims.

### B. Procedural Due Process Claims

Defendants also argue that the FAC contains insufficient allegations to state any procedural due process claim. Again, the Court agrees. Because Yang has not exhausted the available administrative remedies, the Court dismisses these claims.

"Generally, a plaintiff is not required to exhaust state administrative remedies as a prerequisite to bringing an action pursuant to § 1983." *Hopkins v. City of Bloomington*, 774 F.3d 490, 492 (8th Cir. 2014) (citing *Patsy v. Bd. of Regents of Fla.*, 457 U.S. 496, 516 (1982)). Under an exception to this rule, however, "a litigant asserting a deprivation of procedural due process must exhaust state remedies before such an allegation states a claim under § 1983." *Wax 'n Works v. City of St. Paul*, 213 F.3d 1016, 1019 (8th Cir. 2000) (emphasis added). Here, "the only method available for review of a university decision" is by writ of certiorari to the Minnesota Court of Appeals. *Shaw v. Bd. of Regents of Univ. of Minn.*, 594 N.W.2d 187, 191 (Minn. App. 1999); *see also Zweber v. Credit River Twp.*, 882 N.W.2d 605, 610 (Minn. 2016) (noting that the "exclusive method of review" of an action challenging a quasi-judicial decision is by a petition for a writ of certiorari to the court of appeals). Certiorari review addresses "questions affecting the regularity of the proceedings and . . . whether the determination was arbitrary, oppressive, unreasonable, fraudulent, made under an erroneous theory of law, or without any evidence to support it." *Chronopoulos v. Univ. of Minn.*, 520 N.W.2d 437, 441 (Minn. App. 1994). A plaintiff has not exhausted administrative remedies where those remedies remain pending. *See Crooks v. Lynch*, 557 F.3d 846, 848–49 (8th Cir. 2009) (holding that plaintiff had not exhausted state remedies where appeal from state agency in state court was pending).

13

Here, the FAC raises procedural due process claims, which should be subject to review by the state court of appeal. Importantly, Yang petitioned the Minnesota Court of Appeals for a writ of certiorari on March 3, 2025, and the matter is currently scheduled for a non-oral conference on November 13, 2025. *See In re Univ. of Minn. v. Yang*, No. A25-0342 (Minn. Ct. App.). Thus, Yang has not exhausted his administrative remedies.[5]

## II.   MOTION FOR LEAVE TO AMEND

Yang also moves for leave to file another amended complaint, proposing changes to the procedural and due process claims as well as to add a new claim for violation of the Equal Protection Clause. (Doc. No. 45.) Because the proposed amendments would not cure the defects noted above, they would be futile, and the Court denies Yang's motion.

Federal Rule of Civil Procedure 15(a) provides that, if a responsive pleading has already been served, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Courts "should freely give leave when justice so requires." *Id.* However, courts "may appropriately deny leave to amend where there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005) (citation

---

[5] The Court is also concerned that the allegations in the FAC are not sufficient to state any procedural due process claim. The allegations indicate that Defendants afforded Yang notice, opportunity to be heard, application of a careful and deliberate disciplinary standard, and a right of review. Given the pending review by the Minnesota Court of Appeals, however, this Court need not determine whether the disciplinary procedures that Defendants followed satisfied the standard required by the Constitution.

modified). A claim is futile if it fails to state a claim for relief. *Hillesheim v. Myron's Cards & Gifts, Inc.*, 897 F.3d 953, 955 (8th Cir. 2018). Thus, courts assess an amendment's futility under the same standard as a motion brought under Rule 12(b)(6). *Id.*

In the proposed SAC, Yang repleads his procedural and substantive due process claims. (*See* Doc. No. 45-1.) He alleges new procedural deprivations and names four new defendants who are also officers of the University: Elizabeth Wattenberg, Ezra Golberstein, Peter Huckfeldt, and Caitlin Carroll. (*Id.*) Specifically, the proposed SAC contains the following new allegations in support of the due process claim: Dzik acted in "overlapping role[s]" in the process (*id.* ¶ 46); Wattenberg "pressured the hearing panel to pursue an outcome of expulsion" (*id.* ¶ 47); a previously dismissed allegation was improperly used as evidence (*id.* ¶ 48); there is an "undisclosed relationship" between Neprash's spouse and Murray (*id.* ¶ 49); Yang was not permitted sufficient opportunity to cross-examine witnesses (*id.* ¶ 50); one piece of evidence was only provided during (rather than before) the hearing (*id.* ¶ 51); Yang's advocate, Dzik, and Murray had an "unrecorded three-minute breakout session" (*id.* ¶ 53); and in a "prior incident" Golberstein and Neprash "tried to expel [him]" (*id.* ¶ 58). In support of the new equal protection claim, Yang alleges the following: he was "intentionally treated differently from similarly situated students, without rational basis" (*id.* ¶ 68); four other students "found responsible for plagiarism" or involved in other "instances of academic misconduct were not expelled" (*id.* ¶¶ 65–66); AI-based assessments are not applied uniformly (*id.* ¶ 61); and the use of AI tools was discriminatory because of "biases . . . toward non-native English speakers" (*id.* ¶¶ 62–63).

He now seeks $5,510,000 in damages. (*Id.* ¶ 71.)[6]

None of these new allegations can overcome the protections of the Eleventh Amendment or qualified immunity. In addition, the new allegations do not state a substantive due process claim because they do not rise to the conscience-shocking level required. Although the new allegations provide some additional factual support for the procedural due process claims, even these proposed amendments are futile unless and until Yang exhausts his administrative remedies.

Similarly, the new allegations also fail to state a class-of-one claim under the equal protection clause. *See, e.g.*, *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008) (noting that to state a valid class-of-one claim, a plaintiff must allege that they were "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment"); *Robbins v. Becker*, 794 F.3d 988, 998 (8th Cir. 2015) (holding that a plaintiff must provide a "specific and detailed account of the nature of the preferred treatment of the favored class, especially when state actors exercise broad discretion to balance a number of legitimate considerations" (citation modified)). Here, the SAC alleges that other Ph.D. students were not expelled despite academic misconduct, but none of the new allegations specifically relate to the kind or degree of academic dishonesty at issue in Yang's disciplinary action: substantial use of online AI tool throughout this important exam. Absent such details, the SAC fails to state an equal

---

[6] The SAC contains several unsupported conclusory assertions, such as allegations that Defendants made improper use of AI, acted in bad faith, maliciously altered evidence, and lacked sufficient basis to expel him for breach of trust. (*Id.* ¶¶ 55–59.)

protection clause claim.

Thus, the Court denies Yang's motion for leave to amend as futile.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendants' Motion to Dismiss (Doc. No. 28) is GRANTED;

2. Plaintiff's Motion for Leave to File Second Amended Complaint (Doc. No. 45) is DENIED as futile;

3. This action is DISMISSED WITHOUT PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated:  October 31, 2025                    /s/ Jeffrey M. Bryan
                                            Judge Jeffrey M. Bryan
                                            United States District Court